FIRST NATIONAL BANK OF CEDAR RAPIDS, IOWA, PLAIN-
TIFF IN ERROR, V. E. V. ERICKSON, DEFENDANT IN
ERROR.

1. **Warranty**: ADMISSIBILITY IN EVIDENCE. A defense was
founded upon a certain printed warranty alleged to have been
delivered to defendant by plaintiff's assignor at the time of the
execution of the notes sued on. The execution and delivery of
this warranty was denied by plaintiff. Defendant testified in
substance that the warranty was delivered to, and received and
relied upon by him as such, *Held*, Sufficient *prima facie* to permit
the introduction of the instrument in evidence. The denial of
the delivery of the warranty by plaintiff's witnesses presented a
question of fact to be decided by the jury.

2. ———: CONDITIONS. The delivery of a printed warranty of the
quality of a harvester—with the name of the warrantor printed
thereon as a signature—by an agent authorized to deliver the
same, if delivered for and received as a warranty of the quality
of a machine sold, being relied upon by the purchaser to the
knowledge of the seller, would be binding as such warranty,
even though upon the margin thereof there is a condition
printed that it shall be "void unless countersigned by * * *
agent," and no agent has countersigned it.

3. ———. EVIDENCE examined and *Held*, Sufficient to sustain a
finding of breach of warranty, and of a waiver of the right to
have return of the property within a specified time in case it did
not give satisfaction.

4. **Evidence**: BONA FIDE PURCHASER. Under the evidence, plain-
tiff *Held* not to be an innocent purchaser of the notes upon
which the suit was brought.

ERROR to the district court for Lancaster county. Tried
below before POUND, J.

*Harwood, Ames & Kelly*, for plaintiff in error.

*W. B. Baird*, for defendant in error.

REESE, J.

This was an action on two promissory notes executed by
defendant in error to the Williams Harvester Company,

and by it transferred to plaintiff in error. The petition is in the usual form, and declares the plaintiff in the action to be a *bona fide* holder, having purchased the notes for value before maturity, etc.

The answer admits the execution of the notes, and alleges that they were executed as and for a part of the purchase price of a Williams harvester and binder combined, and which said machine was sold to defendant upon a warranty in writing, signed by the Williams Harvester Company. This warranty is set out in the answer, and is as follows:

" This machine is warranted to be of good material and well made, and if a combined machine and properly operated with two horses and a driver, will cut from ten to fifteen acres of grass or grain per day, and will do it as well as any other combined machine. If single, and properly operated with two horses and a driver, will cut as many acres of grass per day, and any kind of grass, as well as any single mower of equal capacity. If a harvester, and properly operated with two horses and a driver, and two binders, will cut from ten to twelve acres of grain per day, as well as any other harvester of the same capacity. If a harvester and binder, and properly operated, it will draw as light, cut and bind as much grain, and do it as well as any other harvester and binder of equal capacity.

"THE WILLIAMS HARVESTER CO.,

"Cedar Rapids, Iowa."

This warranty is all printed, including the signature. It is attached to a blank order for a machine. Between the two, and below the place designed for the signature of the purchaser, is the following:

" (*Remove this warranty and give it to the purchaser*:)

" .................read this warranty, which we give with each machine sold.

" .....................not valid unless countersigned by ........., agent."

There are no other blanks for signatures or otherwise, in connection with the warranty.

It is further alleged in the answer that another note had been executed and paid by defendant, the amount thereof being $104, and that defendant would not have made such payment "had not the said Harvester Company agreed to keep said warranty and agreement in all respects; and also again did the said Harvester Company make an additional warranty in writing * * to put said machine—harvester and binder—in good shape before the harvest of 1883, by putting on a new knotter and movable binder and put the machine in good order." That as soon as defendant discovered that said machine and binder was not of good quality and did not comply with said warranties and agreements, he notified the agents of the Harvester Company, and offered to return said harvester and binder, and in the year 1883 he left it with said agents, who yet have it.

It is alleged that the harvester and binder failed in all respects to perform as warranted, that it was not made of good material, and that the consideration of the notes had failed. Another allegation is that "plaintiff purchased said note in bad faith, and not in the ordinary course of business, and after the maturity of said notes, and well knew the defenses the defendant had to the same." The reply consisted of a general denial. There was a jury trial, which resulted in a verdict and judgment in favor of defendant. Plaintiff alleges error.

The first question to which our attention should be given is the alleged error in the ruling of the trial court in the admission of the warranty referred to, as evidence. The answer alleges that the machine was sold to defendant on the warranty, and defendant testified that it was delivered to him about the time of the sale, and before the execution of the notes, and that at the time he gave the notes he was asked by the person to whom they were given, if he did not have the warranty, and on producing it he was directed to keep it, that it was sufficient. So far as his testimony goes, although given in broken English, and in some re-

spects quite unsatisfactory, it is clear that he relied on this warranty, and kept it as such with the knowledge of the agents of the Harvester Company.  So far, therefore, as the delivery of the instrument and its recognition as a warranty are concerned, there was sufficient to justify the court in its admission as evidence.   It is true that the witnesses for plaintiff contradicted the statements of defendant in almost every particular with reference to the delivery or recognition of the paper as a warranty, but that presented a question of fact for the jury to decide.   There was enough, *prima facie*, to warrant the admission of the instrument.

.  It is insisted that the paper had no legal force as a warranty because of the partial memorandum, " ..............not valid unless conntersigned by ......... agent."   This memorandum is very imperfect and may admit of some doubt as to just what is meant by it.   But this much is evident, that if that instrument was delivered to defendant, as and for a warranty of the machine purchased by him, as he testified it was, and afterwards re-affirmed as such when he called for a warranty, as he testifies, and that the notes were given with such reliance on his part, and of which the agent had knowledge, the Harvester Company was as firmly bound by the warranty as if had been countersigned by its agent in full accordance with the alleged requirements of the memorandum.   Or, stated differently, if the paper was delivered with the machine, or in connection with the contract of sale so as to become a part thereof, and was intended as and received for a warranty according to its terms, then being so received, with the knowledge of the Harvester Company, it would, as between the parties to the contract, to all intents and purposes be as valid as though fully filled up and signed by the Harvester Company, and the company or any one claiming under it with notice, would be estopped to deny its binding force.   Therefore the question as to whether it was so given and received, was one of fact for the jury to determine. ·  It will not do to

say there was no evidence upon this issue to submit to the jury. In addition to the testimony of defendant as to such delivery and recognition, the warranty is found in his possession, of the kind issued by the Harvester Company, and furnished its agents for the purpose of delivering to the purchasers of machines. The probabilities are in favor of the truth of defendant's testimony.

It is insisted that if there was sufficient proof of a warranty, still there was not sufficient proof of a breach. It is shown by the abstract that defendant testified in substance that the harvester would not work; it would not bind, particularly so when the grain was damp in the morning or evening from dew. That it wore out the knotters or binders; that the machine was not constructed of good material, and that it did not have sufficient motion. That the draft was heavy, and that it required more than three horses; that it did not cut well, and that it would not bind well. In addition to this testimony Lewis Helmer testified that the machine would sometimes go for ten and sometimes twenty rods and not bind a sheaf; that the grain was bound very poorly and was delivered upon the ground in a worse condition than if no effort had been made to bind it. Charles Hermance also testified that he saw the machine in the year 1883 in the field, and an effort was being made to use it. That it would not work at all. That it would neither bind nor elevate the grain; it would clog up so that they would have to stop every few feet.

This testimony, if believed by the jury, would be sufficient to warrant them in finding a breach of the warranty, if one had been given. These questions of fact were for the jury to determine.

It is said that defendant, having failed to rescind the contract as soon as the alleged defects were discovered, is now deprived of the defense which he seeks to make. That he not only failed to rescind but waived his right to do so. This contention is based, in part at least, upon the

proof that on the day the machine was tried in Helmer's grain, time was given until the next day at noon, in which defendant could further test it, and in case of failure to perform it might be returned. As to who should "haul it back" the evidence is not clear, but from the testimony of defendant on his cross-examination in answer to a question by plaintiff's counsel, it is made to appear that it was the Harvester Company's duty to return the machine. But this inquiry is not material, as it was insisted by defendant, and he so testified, that by subsequent agreements this contract was rescinded—that the warranty was recognized —and various efforts were made by the Harvester Company, even as late as the year 1883, to make the machine perform. Furthermore, it is alleged that an additional warranty was made in 1883. This instrument is set out in defendant's abstract, and while it cannot properly be called a warranty, it is an agreement to put the harvester and binder "in good shape on or before the harvest of 1883, * * * by putting on a new knotter and movable binder, and put the machine in good order." It is dated March, 14, 1883. This is only one of the circumstances relied upon by defendant to show that the warranty of 1882 was recognized as in force, and that the machine had failed to fill the measure of such warranty.

The Harvester Company waived the right to have the machine returned the next day after its delivery, if not satisfactory, if such right ever existed.

It is claimed that plaintiff is a *bona fide* purchaser of the notes in suit, for value before maturity, and that it is therefore protected in its purchase and entitled to judgment on that ground. On the trial it was admitted of record "that the assistant cashier of plaintiff, The First National Bank of Cedar Rapids, Iowa, was the treasurer of the Williams Harvester Company, and that the president of the one company was the president of the other at the time of the purchase of the notes by plaintiff."

This condition would be enough to put plaintiff on inquiry at least, and we think would charge it with full notice of the defense of defendant. The jury may have found that the machine was constructed of bad material, and it evidently did find that it was not properly constructed. They also found by their verdict that the warranty was made as alleged. It is beyond question that it was the purpose and intention of the Harvester Company that this particular warranty should be given with the machine when sold. The officers of the plaintiff in error had full knowledge of all of these facts if they existed. The notes were purchased by its agents, the president and cashier, with this knowledge. The knowledge of an agent is the knowledge of the principal. Wade on Notice, § 672. Plaintiff was not an innocent purchaser, and the defense is available against it. Id., § 675, et seq. Civil Code, § 31.

It is contended that the jury ignored certain instructions given them on plaintiff's request. These instructions submitted questions of fact upon which the jury found against plaintiff and which have been sufficiently noticed in the foregoing.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.