STATE OF NEBRASKA V. AMERICAN STATE BANK.
JULIA A. STRAUSS ET AL., APPELLEES, V. A. F. ACKERMAN,
RECEIVER, APPELLANT.

FILED MARCH 28, 1922.   No. 22183.

1. **Banks and Banking:** MISAPPROPRIATION OF FUNDS: IMPUTED
   KNOWLEDGE. Where the managing officer of a banking corpora-
   tion deposits in his bank, in the name of another corporation of
   which he is also manager, money and securities belonging to
   others, for whom he is agent and trustee, and receives and ac-
   cepts the deposit for the bank as its sole directing authority, his
   knowledge of the rights of the beneficiaries of the trust may be
   imputed to the bank.

2. ———: ———:  TRUST FUNDS.  Where the managing officer of a
   banking corporation deposits in his bank, to the credit of an-
   other corporation of which he is also manager, a negotiable prom-
   issory note payable to himself, but in fact belonging to bene-
   ficiaries of a trust, for whom he is trustee, neither the bank, if
   chargeable with knowledge of the facts, nor its receiver, in the
   event of insolvency, can become an innocent purchaser or holder
   of the note under an assignment made by the trustee for the
   purpose of paying with trust funds a private overdraft of the cor-
   poration to whom the credit was given.

3. ———: ———:  CANCELATION OF NOTES. . Where a bank know-
   ingly receives and accepts from the makers of notes payable to
   and held by it a specific fund for the purpose of paying the notes
   at maturity, they may be canceled thereafter in the hands of a
   receiver of the bank, though the funds were wrongfully disbursed
   and the notes were allowed to remain in the bank uncanceled.
   *Kremer v. Ackerman, ante, p. 92.*

4. ———:  INSOLVENCY:  TRUST FUNDS.  Where a trustee deposits
   in a bank, in the name of a corporation of which he is. manager,
   trust funds belonging to others, the bank at the time having
   knowledge of the facts, any balance remaining on deposit, when
   the bank is closed on account of insolvency, inures to the benefit
   of the beneficiaries of the trust and may be protected in the hands
   of the receiver as a deposit.

APPEAL from the district court for Hamilton county:
GEORGE F. CORCORAN, JUDGE.  *Affirmed.*

*Charles E. Matson,* for appellant.

*Hainer, Craft & Edgerton, contra.*

Heard before MORRISSEY, C. J., ALDRICH and ROSE, JJ., HOBART and PAINE, District Judges.

ROSE, J.

This is a controversy between A. F. Ackerman, receiver of the American State Bank of Aurora, an insolvent corporation, and Julia A. Strauss and her four children, John L. Strauss, Anna R. Livingston, Mamie E. Kingston and Alvin A. Strauss, claimants.

Through the agency of the Wentz Company claimants in 1919 sold 200 acres of land near Aurora, Nebraska, to Roscoe C. Thompson, James Winters and Frank Hogg for $40,000. The purchasers paid in cash $28,000 and the balance of $12,000 was paid by two notes, one for $8,000 and the other for $4,000, secured by mortgage on 120 acres of the land sold. Of the proceeds of the sale Charles W. Wentz, managing officer of both the bank and the Wentz Company, received for claimants, directly from the purchasers, $13,000 in cash and the notes and the mortgage for $12,000. Claimants had deeded their land to the purchasers, but they have never received the $25,000 thus paid to Wentz, who took the notes in his own name as payee. Claimants have, however, traced their funds and their securities through Wentz, the Wentz Company and the bank into the hands of the receiver. They charge the bank with Wentz's knowledge of their ownership and with the obligation to restore to them their property.

In a proceeding by the state of Nebraska to wind up the affairs of the bank, claimants, by formal pleas, presented for allowance the following items: A claim that they are the owners of the two notes described, one for $8,000 and the other for $4,000, aggregating $12,000, payable on their face to Charles W. Wentz and secured by mortgage on 120 acres of land sold by claimants to Roscoe C. Thompson, the knowledge of Wentz being imputed to the bank and the latter being obliged to restore the property of claimants to them; a claim for the cancelation and the surrender

of two promissory notes, one for $5,000 and the other
for $3,750, aggregating $8,750, payable to the bank, exe-
cuted by claimants Julia A. Strauss and Mamie E. King-
ston, respectively, payment having been made according
to agreement out of the proceeds which Wentz received
for claimants directly from the purchasers of the land
sold by claimants, $25,000 of the same, in money and se-
curities, having been deposited in the bank to the credit
of the Wentz Company, the bank knowing the rights of
claimants; a claim for the balance of the purchase money
to the extent of $4,250, being part of what Wentz received
and deposited in the bank to the credit of the Wentz Com-
pany, claimants asserting the rights of depositors.

The receiver pleaded that the notes were assets of the
bank and that it owed claimants nothing as depositors or
creditors.

The trial court found the issues in favor of claimants
and directed the receiver to turn over to them the pur-
chase money notes and securities in controversy; to cancel
and surrender as paid the notes executed by claimants
Julia A. Strauss and Mamie E. Kingston, respectively;
to allow and pay as a deposit the claim for $4,250. From
this judgment the receiver has appealed.

Questions of fact, of agency and of imputed knowledge
are presented by the appeal and require a more detailed
statement of the case.

The American State Bank commenced business as a
commercial enterprise March 8, 1918. An officer of the
state took charge of it in an insolvent condition March
17, 1920, and was succeeded by Ackerman, receiver, May
14, 1920. The bank has not since been open for the trans-
action of a general banking business.

The Wentz company was a corporation dealing in real
estate, farm loans, mortgages and insurance.

Charles W. Wentz was vice-president and managing offi-
cer of the bank. It had a president in name only. It had
a cashier, but he recognized Wentz as the superior officer

and deferred to him. In some capacity Wentz had exclusive control and management of the Wentz Company. The business of both corporations was generally transacted in the same building with Wentz the controlling spirit in both enterprises. The transactions of the corporations were more or less intermingled. The bookkeepers in the bank kept the books for the Wentz Company. The two corporations occupied the same room and used the same counter, the same vault and the same safe. Each paid half the office rent. The officers of the Wentz Company were officers of the bank. There was no public sign to identify the corporate hand that transferred paper in possession of the Wentz Company or disbursed funds in the bank. The Wentz Company had kept a checking account in the bank, but it was overdrawn more than $20,000 when the crash came.

Is there error in the order requiring the receiver to transfer to claimants their purchase money notes? He takes the position that this ruling is without support in the evidence and that it is contrary to law. He argues that in all the transactions relating to the sale, to the drawing of the papers, to the collection of the purchase price, and to the handling of the funds, Charles W. Wentz and the Wentz Company were the agents of claimants and not of the bank; that in these respects Wentz did not act in the interest of the bank; that he procured the funds in controversy as agents of claimants while absent from the bank; that his knowledge was not imputable to it; that the bank or the state department of trade and commerce or the receiver became an innocent holder for value before maturity and that the purchase money notes went into the hands of the receiver by mesne assignments as assets of the bank. These propositions are skillfully argued, but they cannot be accepted as determining factors in the case.

The purchase money notes were the property of claimants. Others could hold, use or transfer them as trustees

only unless protected by the negotiable instruments law as innocent purchasers or holders for value before maturity. The notes were traced into the hands of the receiver in the following manner: When the account of the Wentz Company was heavily overdrawn and the bank itself was in danger of going to the wall March 15, 1920, Wentz took the notes to Lincoln and Omaha intending to use them for the benefit of the bank in raising money to apply on the overdraft of the Wentz Company. While he was a drunken, nervous wreck in Omaha he there entrusted the notes to his wife. Missed from his bank the state department of trade and commerce followed him and promptly found him. In Omaha the state sheriff took the papers from the wife of Wentz in his absence and gave them to the head of the state department of trade and commerce, to whom they were subsequently assigned by Wentz while in a hospital. By mesne transfers the receiver procured them. Assuming that the officers of the state department of trade and commerce did not know that the notes belonged to claimants or that Wentz held them as trustee for claimants, was the receiver an innocent holder with authority to pay the debts or overdraft of the Wentz Company with the funds of claimants? If the bank itself had previous knowledge of the facts or was chargeable with the knowledge of Wentz, the question must be answered in the negative. The answer is not found wholly in what Wentz did as agent for claimants while absent from the bank. It is important to inquire what he did as an officer of the bank after he returned with the property of claimants.

The bank's connection with the purchase money note for $8,000 did not begin with the seizure of the state officer or with Wentz's transfer to the head of the state department of trade and commerce. Wentz had previously delivered it to the bank March 4, 1920, and then directed the cashier to credit it to the bank account of the Wentz Company, the same as if it had been a check payable to the latter. The cashier, recognizing Wentz as the superior officer

and the manager of the bank, did as directed. The cashier's act was the act of Wentz. The act of Wentz in this transaction was equivalent to the bank's acceptance of the note under an agreement to credit the amount thereof to the account of the Wentz Company. The ultimate effect was to reduce the overdraft of the Wentz Company to the extent of $8,000 with the funds of claimants—a banking transaction of financial interest to the bank. In accepting for the bank the purchase money note of claimants on the condition mentioned, Wentz did not represent claimants. They had no power to select an agent to perform corporate acts like that for the bank. In this transaction, through which the bank procured the property of claimants, Wentz performed a banking function for the bank, and for that purpose he was the bank itself, the cashier deferring to his superior. Wentz sold the land for claimants, drew the papers transferring the title to their land, and without their authority or knowledge made the purchase money notes payable to himself. He knew all about the transactions. He had no authority to hold, use or transfer the negotiable paper of claimants for his own benefit or for the benefit of the Wentz Company or for the benefit of the bank. He could lawfully hold, use or transfer the notes in the capacity of trustee only. Claimants were not guilty of any dishonest, deceitful or fraudulent conduct. They confided in Wentz, the managing officer of the bank —a chartered institution under the constant supervision of the state department of trade and commerce. The experts of that department did not keep the two corporate agencies of Wentz separate and distinct in the eyes of those who dealt with the bank or of the public at large. In a situation like that his agency for claimants should not be extended beyond strict legal bounds to justify payment of the Wentz Company's debts or overdraft with the funds of claimants. It was through the banking transaction of Wentz in directing the cashier to accept the note that the bank first accepted it. This was the agency of the

bank and the agent had full knowledge of the facts. Furthermore the bank had a previous arrangement to accept through Wentz the proceeds of the sale. Through him the bank had agreed to lend Julia A. Strauss, claimant, $5,000 and Mamie E. Kingston, claimant, $3,750. Each had accepted her loan and had executed and delivered her note for the amount of it, payable to the bank, with the distinct understanding that it would be paid out of the purchase money when entrusted to Wentz for claimants by purchasers of the land. This was a legitimate banking transaction in which Wentz was the sole representative of the bank. His knowledge in respect to it and his knowledge of the rights of claimants, when he directed the bank as its officer through its cashier to accept the purchase money note for $8,000, are in law imputable to the bank. This purchase money note for $8,000 and the other one for $4,000 grew out of the same transactions and there is no lawful way for the bank to escape either the knowledge or the agency of Wentz. It follows that neither the bank nor the receiver is an innocent purchaser or an innocent holder. There is no error in the order directing the receiver to transfer these notes to claimants.

Did the trial court err in directing the receiver to cancel and return to the makers the note for $5,000 and the note for $3,750, payable to the bank and executed by claimants Julia A. Strauss and Mamie E. Kingston, respectively? It was agreed between the bank itself and the makers of the notes that the notes should be marked "Paid" and returned when Wentz received for claimants the proceeds of claimants' land. At a time when the knowledge of Wentz was imputable to the bank he procured for claimants $13,000 in cash and $12,000 in securities, both being proceeds of the sale, and deposited in the bank, in the name of the Wentz Company, the equivalent of $25,000 belonging to claimants. The bank accepted and held these proceeds while chargeable with knowledge of Wentz's trusteeship. Under such circumstances neither the bank

nor the receiver could lawfully hold, use or transfer the
trust funds or trust securities of claimants to pay the
debts or overdraft of the Wentz Company. As between
the bank and claimants the entries on the bank books did
not change the relations of the parties or the liabilities of
the bank. On this phase of the case the decision is con-
trolled by the ruling in *Kremer v. Ackerman, ante p.* 92.
The order directing the receiver to mark the notes involved
in this item "Paid" and turn them over to the makers must
therefore be affirmed.

The remaining item to be considered is the claim for
$4,250 allowed by the trial court as the balance of a de-
posit. This balance is explainable as follows: Out of the
purchase price Wentz received for claimants $25,000 in
cash and securities. The receiver is entitled to credit for
the two purchase money notes, aggregating $12,000, which
he is ordered to transfer to claimants. He is also entitled
to credit for the two other notes, aggregating $8,750,
which he is ordered to return to the makers marked
"Paid." The sum of these two credits is $20,750. The
difference between the latter item and the $25,000 received
by Wentz for claimants is $4,250, the amount of the claim.
Was it properly allowed by the trial court as a deposit?
It belonged to claimants. Wentz received it as trustee
for them and it was in fact deposited in the bank. Knowl-
edge of claimants' rights and of Wentz's trusteeship was
imputable to the bank. The deposit, therefore, though
made in the name of the Wentz Company, inured to the
benefit of the beneficiaries of the trust, the claimants, and
they are entitled to protection as depositors.

AFFIRMED.