STATE OF NEBRASKA V. AMERICAN STATE BANK.
A. F. ACKERMAN, RECEIVER, APPELLANT, V. JAMES R.
FARNEY, INTERVENER, APPELLEE.

FILED MARCH 28, 1922.   No. 22240.

1. **Banks and Banking:** MISAPPROPRIATION OF FUNDS: IMPUTED
   KNOWLEDGE.  Where the managing officer of a banking corporation
   deposits in his bank, in the name of another corporation of which
   he is also manager, money or checks belonging to a third person
   for whom such manager is agent and trustee, and receives and
   accepts the deposit for the bank as its sole directing authority,
   his knowledge of the rights of the beneficiary of the trust may be
   imputed to the bank.

2. ——: ——: TRUST FUNDS.  Where a trustee deposits in a
   bank, in the name of a corporation of which he is manager, trust
   funds belonging to a third person, the bank at the time having
   knowledge of the facts, the bank may be held liable to the bene-
   ficiary of the trust as a depositor, if the trust funds were wrong-
   fully paid out on checks of the trustee to pay an individual debt
   owing by him to the bank.

APPEAL from the district court for Hamilton county:
EDWARD E. GOOD, JUDGE. *Affirmed.*

*Charles E. Matson,* for appellant.

*Peterson & Devoe, contra.*

Heard before MORRISSEY, C. J., ALDRICH and ROSE, JJ.,
HOBART and PAINE, District Judges.

ROSE, J.

This is a controversy between A. F. Ackerman, receiver
of the American State Bank of Aurora, Nebraska, an in-
solvent corporation, and James R. Farney, claimant.

In a proceeding by the state of Nebraska to wind up
the affairs of the bank, Farney filed a claim for proceeds
of lands sold by him through the agency of the Wentz Com-
pany, asserting the rights of a depositor and charging that
Charles W. Wentz, managing officer of both the bank and
the Wentz Company, collected for him his purchase money

and fraudulently deposited it in the bank to the credit of the Wentz Company, and that the bank accepted the deposit with knowledge that it was a trust fund belonging to him and wrongfully disbursed it on checks of the Wentz Company to pay personal debts of the latter. The receiver objected to the allowance of the claim on the ground that claimant entrusted his purchase money to his own agent, the Wentz Company, a corporation that deposited it in its own name and checked it out before knowledge of claimant's equities reached the bank. Upon a full hearing the district court found the issues in favor of claimant and allowed his claim as a depositor for a balance of $38,719.35 and interest. The receiver has appealed.

Questions of fact, of agency and of imputed knowledge are presented by the appeal and require a more detailed statement of the case.

James R. Farney, claimant, owned two farms in Hamilton county and sold them through the agency of the Wentz Company. Between February 28, 1920, and March 15, 1920, Wentz received from the purchasers for claimant the proceeds of the sales and deposited them in the bank to the credit of the Wentz Company. On its checks the bank paid out the purchase money of claimant. When the bank failed the account of the Wentz Company was overdrawn more than $20,000. There was owing to claimant at the time purchase money to the extent of $38,719.35. He did not authorize the deposit in the name of the Wentz Company, nor did he direct the bank to accept it as a deposit. Neither did he instruct the bank to make disbursements on the checks of the Wentz Company. In connection with these transactions he was not guilty of fraud or deceit or wrongdoing of any kind, but his demands for the balance of the proceeds of his farms, though traced in the form of trust funds from the purchasers through Wentz and the Wentz Company into the bank, have been unavailing. Shakespeare would have pleaded the defense of the bank in this language:

"Thou can'st not say I did it; never shake
Thy gory locks at me."

The American State Bank commenced business as a commercial enterprise March 8, 1918. An officer of the state took charge of it in an insolvent condition March 17, 1920, and was succeeded by Ackerman, receiver, May 14, 1920. The bank has not since been open for the transaction of a general banking business.

The Wentz Company was a corporation dealing in real estate, farm loans, mortgages and insurance.

Charles W. Wentz was vice-president and managing officer of the bank. It had a president in name only. It had a cashier, but he recognized Wentz as the superior officer and deferred to him. In some capacity Wentz had exclusive control and management of the Wentz Company. He owned all of its stock and for practical purposes was the company itself. The business of both corporations was generally transacted in the same building with Wentz the controlling spirit in both enterprises. The transactions of the corporations were more or less intermingled. The bookkeepers in the bank kept the books for the Wentz Company. The two corporations occupied the same room and used the same counter, the same vault and the same safe. Each paid half the office rent. The officers of the Wentz Company were officers of the bank. There was no public sign to identify the corporate hand that accepted funds for the Wentz Company or manipulated the business devices used by Wentz in disbursing funds for the bank.

For the purpose of escaping liability for the disbursement of claimant's money on the checks of the Wentz Company, the receiver argues that Wentz and his company were the agents of claimant; that it was no part of the duties of Wentz, as an officer of the bank, to represent claimant in collecting and disbursing the proceeds of the sales; that, in transacting business for claimant, Wentz and the Wentz Company did not act for or in the interests of the bank; that Wentz was not the sole representative of

the bank in the transactions resulting in the deposit to the credit of the Wentz Company on the books of the bank; that Wentz, as manager of the Wentz Company, received and deposited the funds as agent of claimant; that the bank received and paid out the funds in good faith without actual or imputed knowledge of claimant's equities. In this connection it is insisted that the cashier of the bank, without knowledge of the facts, made deposit slips directing credit in favor of the Wentz Company on the books of the bank for the funds of claimant, and that other representatives of the bank also took part in the transactions. On evidence of this nature the finding that Wentz was the sole representative of the bank is challenged as being without support in the evidence and contrary to law. The position of the receiver is untenable, when the proper deduc·tions are drawn from the undisputed evidence. The Wentz Company was the agent of claimant in making the sales. Wentz drew the contracts of sale and the deeds transferring title. He collected the purchase price for claimant. He knew all about the facts. When he deposited the purchase money of claimant in the bank to the credit of the Wentz Company the funds became trust funds and Wentz and the Wentz Company became claimant's trustees. Thereafter the Wentz Company could lawfully use or check out the funds of claimant as trustee only. The entries on the books of the bank did not change the relation of Wentz or his company to these funds or to claimant. The bank itself, if chargeable with the knowledge of Wentz, could not lawfully use the trust funds for its own benefit or to pay the private debts of Wentz or of the Wentz Company. Accepting a deposit is banking business and is a matter of interest to the bank. The effect of depositing claimant's money to the credit of the Wentz Company was to reduce the amount of its overdraft—a banking transaction of financial interest to the bank. The test of the bank's knowledge is not what Wentz, its vice-president and manager, did as agent for claimant, but what he did with claim-

ant's money while performing banking functions as the bank's officer.

Wentz was the dominant force in the bank. When he spoke his utterance was the law of the bank. When the cashier made a deposit slip, effective for the purpose of crediting claimant's money on the books of the bank to the account of the Wentz Company, the cashier's act was the act of Wentz. If the cashier did not get a peremptory order to make the deposit slip when he received from Wentz the checks for claimant's purchase money, he acted pursuant to a business custom of Wentz which required funds belonging to clients of the Wentz Company to be deposited to its credit in the bank. In either case the will of Wentz was supreme and the act of the cashier was the mere impression of Wentz's power. The bank received and accepted these funds. This was an act of the banking corporation and could be performed alone by a representative of the bank. Wentz offered the purchase money for deposit to the credit of the Wentz Company and at the same time accepted it for the bank through its cashier. Claimant had no authority to select for the bank an agent to receive and accept a deposit from himself or from any one else. The receiving and the accepting of claimant's deposit, therefore, were not independent acts of the cashier, but were banking acts of Wentz as vice-president and manager, operating through the cashier in this respect as a mere instrument of the former's will. Notice to the banking corporation, through its cashier, that Wentz deposited to the credit of the Wentz Company and accepted for the bank trust funds of the former's clients was unnecessary, because Wentz, the managing officer, was the bank itself for practical business purposes and he knew all about the facts. The finding that Wentz was the sole representative of the bank is the only proper conclusion from the evidence on this issue.

The receiver also contends that the bank and Farney never entered into the relation of banker and depositor.

Wentz voluntarily undertook to manage for claimant his purchase money. He was himself the Wentz Company. As trustee for claimant Wentz and his company bore to the bank the relation of depositor. The trust fund went into the bank as a deposit subject to check. The bank was chargeable with knowledge of these facts. Claimant was therefore entitled to protection as a depositor. *Strauss v. Ackerman, ante, p.* 111.

There is no error in the record, and the judgment is

AFFIRMED.