APPEAL OF JULIA A. STRAUSS.

Docket No. 1077.   Submitted June 29, 1925.   Decided September 9, 1925.

Income received for the taxpayer by her agent in the year 1920 should be included in her income-tax return for that year, although it did not come into her actual possession until 1922.

*Charles P. Craft, Esq.*, for the taxpayer.
*Robert A. Littleton, Esq.*, for the Commissioner.

Before MARQUETTE and MORRIS.

This appeal is from the determination of a deficiency of $138.34 in income taxes for the calendar year 1920, arising from the inclusion by the Commissioner in gross income for that year of certain profit realized on the sale of a farm. From a stipulation and the pleadings, the Board makes the following

FINDINGS OF FACT.

The taxpayer was a resident of Aurora, Nebr. In the fall of 1919 she, for herself and four children, John L. Strauss, Anna R. Livingston, Mamie E. Kingston, and Alvin A. Strauss, contracted, through the agency of the Wentz Co., to sell a certain tract of land for $24,000 to Roscoe C. Thompson, $2,500 earnest money being paid. March 1, 1920, final settlement was made, the purchaser paying to Charles W. Wentz $9,500 by check, and giving two notes, one for $8,000 and the other for $4,000, secured by a first mortgage for $12,000, whereupon the deed was delivered and the purchaser secured possession. Wentz was president and general manager of the Wentz Co., a corporation dealing in real estate, farm loans, mortgages, and insurance. He was also vice president and managing officer of the American State Bank. The business of both corporations was generally transacted in the same building with Wentz the controlling spirit in both enterprises. The transactions of the two corporations were more or less intermingled. The bookkeepers in the bank kept the books for the Wentz Co. The two corporations occupied the same room and used the same counter, vault, and safe. Each paid half the office rent. The officers of the Wentz Co. were officers of the bank. There was no public sign to identify the corporate hand that transferred paper in the possession of the Wentz Co. or disbursed funds in the bank. Wentz, upon receipt of the $2,500 from Thompson, deposited it, together with $1,000 received on another sale of real estate for the taxpayer and her children, to the credit of the W. C. Wentz Co. in the American State Bank. When Thompson made his final settlement the notes, mortgage, and check were made payable to Wentz, who deposited the check for $9,500 in the American State Bank to the credit of the W. C. Wentz Co., and directed his cashier to credit the $8,000 mortgage note to the W. C. Wentz Co. on the books of the bank to reduce an overdraft of that company on said bank. Prior to the Thompson settlement, Wentz had induced the taxpayer and her daughter, Mamie E. Kingston, to purchase certain insurance stock for which they gave notes of $5,000 and $3,750, respectively, to the bank, which notes, it was understood, were to be paid out of the proceeds of the Thompson settlement.

Some time during March, 1920, the American State Bank was closed and taken possession of by the department of trade and commerce of the State of Nebraska. Wentz disappeared but was located in Omaha, Nebr., where he had taken certain securities in the hope of raising money on them, among them being the Thompson notes, and

also the mortgage with an assignment in blank, which were turned over to J. E. Hart, an officer of the State, and by him to one Ackerman, receiver for the bank.

The taxpayer, for herself and four children, filed her claim against the receiver in the District Court of Hamilton County, Nebr., claiming and praying that the court order him to assign to them the Thompson notes and mortgages and turn over to her the note for $5,000 held by the bank, and to Mamie E. Kingston her note for $3,750, and pay them in cash $4,250 to make up the balance. The court decided in their favor, from which an appeal was taken to the Supreme Court of Nebraska by the receiver, in which action judgment was affirmed. In 1922 the receiver delivered to the taxpayer the Thompson notes and mortgage, the note of the taxpayer given to the bank for the insurance stock, and the balance of $4,250 in cash, and to Mamie E. Kingston her note for $3,750. In connection with the suit the taxpayer in 1922 paid attorneys' fees in the amount of $5,000.

The taxpayer's books were kept on the cash receipts and disbursements basis.

The taxpayer reported the profit on the transaction and deducted the attorneys' fees of $5,000 in her return for the year 1922.

DECISION.

The determination of the Commissioner is approved.

OPINION.

MORRIS: The amount of the profit realized by the taxpayer on the sale of the land is not in dispute, the principal question being whether such profit should be returned for income-tax purposes in the year 1920 or 1922. The taxpayer contends that while in some instances payment to an agent is payment to the principal, and consequently receipt of income by the agent in a given year should be returned by the principal for such year, yet, where grave legal doubt arises as to the agency and the facts and circumstances surrounding the transaction in which the agent is involved, income is not taxable until the same actually passes into the hands of the recipient. It is clear from the record that the Wentz Co. was the duly authorized agent to execute the sale of the property to Thompson. Some question is raised in the taxpayer's brief as to the extent of that agency, and it is contended therein that Wentz had no authority to make final settlement and collect the money. There is no evidence before us, however, of such a limitation. In our opinion the well-established principle that receipt by the agent is receipt by the principal must

govern this transaction. *Maryland Casualty Co.* v. *United States*, 251 U. S. 342. This conclusion is supported by the contentions of the taxpayer and the opinion of the Supreme Court of Nebraska in the case of *Strauss* v. *Ackerman*, 187 N. W. 762, set forth in the following language of the decision:

In a proceeding by the state of Nebraska to wind up the affairs of the bank, claimants, by formal pleas, presented for allowance the following items: A claim that they are the owners of the two notes described, one for $8,000 and the other for $4,000, aggregating $12,000 payable on their face to Charles W. Wentz and secured by mortgage on 120 acres of land sold by claimants to Roscoe C. Thompson, the knowledge of Wentz being imputed to the bank and the latter being obliged to restore the property of claimants to them; a claim for the cancellation and the surrender of two promissory notes, one for $5,000 and the other for $3,750, aggregating $8,750, payable to the bank, executed by claimants Julia A. Strauss and Mamie E. Kingston, respectively, payment having been made according to agreement out of the proceeds which Wentz received for claimants directly from the purchasers of the land sold by claimants, $25,000 of the same, in money and securities, having been deposited in the bank to the credit of the Wentz Company, the bank knowing the rights of claimants; a claim for the balance of the purchase money to the extent of $4,250, being part of what Wentz received and deposited in the bank to the credit of the Wentz Company, claimants asserting the rights of depositors.

\*          \*          \*          \*          \*          \*          \*

The purchase money notes were the property of claimants. Others could hold, use or transfer them as trustees only unless protected by the negotiable instruments law as innocent purchasers or holders for value before maturity.

\*          \*          \*          \*          \*          \*          \*

It follows that neither the bank nor the receiver is an innocent purchaser or an innocent holder. There is no error in the order directing the receiver to transfer these notes to claimants.

\*          \*          \*          \*          \*          \*          \*

The remaining item to be considered is the claim for $4,250 allowed by the trial court as the balance of a deposit. This balance is explainable as follows: Out of the purchase price Wentz received for claimants $25,000 in cash and securities. The receiver is entitled to credit for the two purchase money notes, aggregating $12,000, which he is ordered to transfer to claimants. He is also entitled to credit for the two other notes, aggregating $8,750, which he is ordered to return to the makers marked "Paid." The sum of these two credits is $20,750. The difference between the latter item and the $25,000 received by Wentz for claimants is $4,250, the amount of the claim. Was it properly allowed by the trial court as a deposit? It belonged to claimants. Wentz received it as trustee for them and it was in fact deposited in the bank. Knowledge of claimants' rights and of Wentz's trusteeship was imputable to the bank. The deposit, therefore, though made in the name of the Wentz Company, inured to the benefit of the beneficiaries of the trust, the claimants, and they are entitled to protection as depositors.

We are of the opinion that the taxpayer should return the profit on the sale of the land in the year 1920. As the taxpayer's books were kept on the cash receipts and disbursements basis, the item of $5,000 attorneys' fees paid in 1922 is not deductible in the year 1920.

ARUNDELL not participating.