R. O. BROWNELL, RECEIVER, APPELLEE, v. HERMAN C. RUWE, APPELLANT.

FILED JULY 6, 1928. No. 26136.

*Gray, Brumbaugh & McNeil, C. H. Kubat* and *J. L. Kaley,* for appellant.

*Courtright, Sidner, Lee & Gunderson, C. M. Skiles* and *I. D. Beynon, contra.*

Heard before GOSS, C. J., ROSE, DEAN, THOMPSON and HOWELL, JJ., and BEGLEY and REDICK, District Judges.

BEGLEY, District Judge.

Action to recover upon two promissory notes for $2,500 each. The defense was lack of consideration and fraud in the inception of notes.

At close of testimony the trial court directed a verdict for plaintiff for the full amount, and from the overruling

of the motion for a new trial and judgment thereon, the defendant appeals.

The pleadings and evidence disclose that on March 19, 1918, the Lion Bonding & Surety Company duly increased its capital stock from $252,000 to $1,000,000, and gave an option to E. R. Gurney and W. O. Van Wyck for the purchase of the authorized addition at a price of $145 a share, net to the company. Gurney and Van Wyck organized the Bankers Sales Agency, a partnership, to sell the stock at $200 a share. Gurney and Van Wyck were officers of the Lion Bonding & Surety Company, and Gurney was also president of the First Bank of Nickerson, and also interested financially in some fourteen other banks. On July 18, 1918, one C. E. Negus appeared at defendant's farm home, representing himself as cashier of the First Bank of Nickerson, and that he was acting for the Bankers Sales Agency in selling stock of the Lion Bonding & Surety Company, and that the sales were being made through the banks of the state of Nebraska by said agency, without commission. He further represented that the stock was worth $200 a share and that the Lion Bonding & Surety Company paid 6 per cent. dividends quarterly thereon; that the company was protected by the state guaranty fund, the same as state banks; that the stock cost the Bankers Sales Agency $200 a share and was being sold without commission through the banks of the state; that all money invested in stock would be refunded to purchasers on 30 days' notice; that said statements were false, and in reliance upon the same defendant purchased 50 shares of said stock and gave four notes in payment in the sum of $2,500 each, due six months after date, payable to C. E. Negus. Two notes were sold to a bank at Arlington, and subsequently paid by defendant, and the other two were renewed from time to time in the name of C. E. Negus and are the two involved in this suit.

Plaintiff receiver contends that the First Bank of Nickerson purchased the original notes in question from C. E. Negus on July 19, 1918, for value, in the regular course

of business, and without notice of defenses or infirmities therein, and has always been the owner of the renewals, including the ones here in suit; and further contends that defendant is estopped to make a defense in this action by reason of having previously elected to bring an action in damages against the Bankers Sales Agency, C. E. Negus and W. A. Taylor, in the district court for Douglas county, Nebraska, which suit is still pending.

Fraud in the inception of the notes was proved, and the only question for determination is whether there was sufficient evidence to go to the jury as to whether or not plaintiff bank was a holder in due course. The question to be determined is: Was the knowledge of Negus, the cashier, imputed to the bank when he sold his own notes to the bank, thus acting for himself as seller and also for the bank as purchaser?

The original notes were not indorsed to the bank by Negus on Juy 19, 1918. A certificate of deposit was made out stating that "Herman C. Ruwe has deposited in this bank twenty-five hundred dollars, payable to the order of Bankers Sales Agency." Negus' name nowhere appears in the transaction on the banks books. When the notes come due Negus each time personally secured renewals in his own name, and defendant had no knowledge that the bank was claiming any interest in the notes, or that the representations of its cashier were false, until after the last renewal was given.

The rule is well established that knowledge of an officer of a bank, acquired while acting beyond the scope of his authority, is not imputed to the bank, and this is especially true when the agent is engaged in an independent fraudulent scheme. But we have a different situation in the present case. Here the bank is seeking to enforce a contract made by its cashier, who was its sole managing officer, and which was later purchased from said officer by the bank. As cashier it was the duty of Negus to pass upon all paper and the discounting of all notes. When he dealt with himself there was none other to communicate with,

nor any one from whom knowledge could be concealed. What he knew as an individual he was also bound to know as cashier. Where an officer is acting both for himself as an individual and as manager of a banking corporation, in the purchase of a note from himself by the bank, and his action in that behalf is adopted by the bank, his knowledge as a man is equally his knowledge as cashier. *First Nat. Bank v. Erickson*, 20 Neb. 580; *State v. American State Bank*, 108 Neb. 92; Id. 108 Neb. 111; Id. 108 Neb. 119; Id. 108 Neb. 129; *First Nat. Bank v. Burns*, 88 Ohio St. 434; 49 L. R. A. n. s. 764; *Farmers & Merchants State Bank v. Kohler*, 159 Minn. 35; *Louisa County Nat. Bank v. Burr*, 198 Ia. 4; *Emerado Farmers Elevator Co. v. Farmers Bank*, 20 N. Dak. 270.

Claim is made by appellee herein that Anderson, assistant cashier, transacted the business in the purchase of the notes and Negus only acted for himself as seller. We do not think this position is tenable. Negus was the superior officer, whose duty it was to discount paper or purchase notes. In transactions where he was present, he cannot be superseded in authority by an inferior officer. What Anderson did was merely under the direction of Negus. *State v. American State Bank*, 108 Neb. 129. To say that Negus stepped aside in his duties as cashier while the notes were being purchased would be to create sufficient suspicion to put the assistant cashier on inquiry as to any defenses which might be raised against the notes.

The filing of a suit against other parties by the defendant to recover damages caused by their deceit in selling the stock in question is not such an election of remedies as will prevent the defendant herein from setting up a defense of want of consideration and fraud when sued upon the notes thus secured. The actions are between different parties and the defendant had paid two of the notes which are not involved in this action. The positions are not inconsistent. 20 C. J. 8; *Zimmern v. Blount*, 238 Fed. 740.

The case should have been submitted to the jury and the

court erred in directing a verdict for the plaintiff.   The judgment is

REVERSED.