Beryl Hillyard v. Commissioner.
Hillyard v. Commissioner
Docket No. 108838.
United States Tax Court
1942 Tax Ct. Memo LEXIS 107; 1 T.C.M. (CCH) 22; T.C.M. (RIA) 42584; October 30, 1942
*107 R. B. Cannon, Esq., and Claude Collard, C.P.A., 403 Petroleum Bldg., Fort Worth, Tex., for the petitioner. D. D. Smith, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, J.: This proceeding seeks a redetermination of deficiency in income tax of $2,446.81 for the year 1939. Various concessions having been made, the only question remaining is whether petitioner is taxable upon income realized on the sale of oil and gas in 1938 from properties in which petitioner, together with others, had an interest, the actual receipt of her share thereof having been denied her until 1939. [The Facts] Petitioner is an individual residing in Denver, Colorado. Her income tax return for the year in question was filed with the collector of internal revenue for the second district of Texas at Dallas. In 1926 Luther C. Turman (who was then petitioner's husband) and J. C. Maxwell owned certain oil and gas properties located in Crane County, Texas. They assigned an undivided one-half interest in these properties to the Tidal Oil Company and at about the same time entered into two agreements in writing with respect to the development and operation of the properties. Under the agreements *108 Tidal Oil Company was constituted operating lessee and was given exclusive charge and control over the development, operation, and maintenance of the properties. After certain specified initial expenditures had been made by the operating lessee, all of the expenses of operation and maintenance were to be borne by the parties in proportion to their respective interests in the property. The operating lessee was given a first lien upon the interests of Turman and Maxwell on certain of the property to secure the payment to it of any sums expended in connection with the property. A detailed monthly statement to Turman and Maxwell of all expenditures was required of the operating lessee. The parties were given the right to dispose of their portion of the oil to their best advantage. This was an absolute right under the terms of one of the agreements, and under the other effective only if the price which was to govern was under the prevailing market price as established by major pipeline companies. With that limitation the operating lessee was to "have control over all oil, gas and casinghead gas produced from said property and the right to market the same for and on behalf of the parties *109 hereto." The contract contains no express provision as to the manner of payment by the purchaser or of transmission of the proceeds to Turman and Maxwell. No date for the termination of the contract was specified. The agreements were stated to be binding upon the "heirs, legal representatives, successors and assigns" of the parties. On September 1, 1930, petitioner filed suit in the District Court of Tarrant County, Texas, for a divorce from L. C. Turman in which she sought custody of their two children and a division of the common property of the marriage. In the course of extensive litigation which ensued W. E. Allen was appointed receiver of all the properties of petitioner and L. C. Turman. W. E. Allen resigned as receiver in June of 1935 and J. R. Overstreet was appointed substitute receiver. Among the properties coming into the custody and control of J. R. Overstreet as receiver was the interest in the oil and gas properties above-mentioned. The court ultimately awarded the properties to petitioner with Overstreet handling the accounting as receiver. Overstreet was given full authority to conduct the business "and to that end receive rents, tolls, collect royalties, revenue *110 and income of whatsoever kind due and to become due, collect, compound and compromise, and demand, bring suits and generally to manage the property, to sell property under appropriate order of * [the] Court, and to hold the proceeds arising from the operation of the properties herein, subject to the orders of * [the] Court, * * *." The court order approving the final report of the receiver, Overstreet, and discharging him and closing the receivership, dated April 28, 1939, ordered all properties in the receivership "restored to and vested in" petitioner. In 1938 the properties in question were operated by the Tidewater Associated Oil Company, successor of Tidal Oil Company under the above-mentioned agreements. As oil was produced it was sold to the Humble Oil & Refining Company or the Humble Pipeline Company, payment being made currently. In 1938 an attorney named Lattimore notified Tidewater Associated Oil Company that the validity of the receivership had been attacked by Turman and that it should not make further payments to petitioner until the case was settled. Lattimore advised that he would seek to hold Tidewater responsible in the event the matter was decided in Turman's *111 favor if they continued to make payment to petitioner. The head of the legal department of Tidewater advised its employe in charge of partnership accounting to refrain from making further payment to petitioner until the case had been settled. During 1939 that employe received a release from the legal department and from the crude oil department advising him that it was in order for him to resume making payments to petitioner, which he did. Tidewater Associated Oil Company lodged with the internal revenue agent in charge at Dallas, Texas, six returns on Form 1065 being "Partnership Return of Income" covering the joint operation of the properties in question. The returns were stamped "Received December 20, 1940, Int. Rev. Agt. in Charge, Dallas, Texas." The returns were for the year 1938 and disclosed the undivided interest of Overstreet in the property and his distributive share of the income. They were not executed. Petitioner duly included in her 1938 individual income tax return the item of $21,014.99 which is the amount in question. Respondent determined this amount to be income to her in 1939 when it was received by her in cash. With respect to the $21,014.99 respondent in his *112 notice of deficiency stated that there was included in petitioner's taxable income for 1939 "the impounding income released to you in that year." With respect to another adjustment arising out of the transactions in question the notice of deficiency stated: Income is increased $586.54, by your distributive share of income from a joint venture operated with Tidewater Oil Company, which joint venture keeps its records on the accrual basis of accounting. [Opinion] To petitioner's contention that this income was properly taxable to her in the year in which she reported it because as her "distributive" share of the proceeds of a joint venture it was income to her in the year of receipt by the joint venture whether distributed or not, the rejoinder made by respondent is, first, that no such circumstance appears; and, second, that even if it existed, the nature of petitioner's interest makes no difference if in fact she was prevented from actually receiving the income by the act of her co-adventurer in retaining it. It is difficult to discern any foundation for either contention. Not only is it clear from the agreement of the parties that they were engaged in a joint venture in *113 which the profits and expenses of operating jointly owned property were to be shared, limited control was provided, and accountability for the proceeds stipulated, see First Mechanics Bank v. Commission (C.C.A. 3rd Cir.), 91 Fed. (2d) 275; not only was the conduct of those interested consistent solely with such a relationship in that the income of the enterprise was returned as partnership income and the tax computed and paid accordingly; but respondent in the deficiency notice refers to the arrangement as such and designates petitioner's receipts from this very source as "income from a joint venture operated with Tidewater Oil Company, which joint venture keeps its records on the accrual basis of accounting." At best, if the relationship was not one of joint venture it was an agency, with petitioner the owner of the operating proceeds immediately upon receipt by her agent. Julia A. Strauss, 2 B.T.A. 598. The second assertion is equally without merit. From the Board's earliest consideration in January, 1925, Robert A. Faesy, 1 B.T.A. 350, to disposition by the Supreme Court as recently *114 as 1938, Heiner v. Mellon, 304 U.S. 271, it has apparently never been seriously doubted "that joint venturers were taxable as partners and were taxable upon the income received by the joint venture whether or not such income was distributed." First Mechanics Bank v. Commissioner, supra, 279. In Robert A. Faesy, supra, the Board took the view that "the fact that subsequent disagreement with his partner, and litigation, has precluded him from ever receiving any of this money does not lessen his taxability." And in Heiner v. Mellon, supra, "The Mellons contend that under the law of Pennsylvania no distribution of profits could lawfully have been made by the surviving partners as liquidating trustees until all debts and liabilities, contingent or otherwise, had been paid or satisfied and the partners' capital returned; and that * * * their respective shares * * * were not distributable and could not be deemed taxable income of the partners" but the Court pointed to the law and the regulations dealing with the liability of a partner to tax upon his "distributive" or "proportionate" share *115 of partnership income whether or not distributed and disposed of the taxpayer's contention with the statement that the "tax is thus imposed upon the partner's proportionate share of the net income of the partnership, and the fact that it may not be currently distributable, whether by agreement of the parties or by operation of law, is not material." North American Oil Consolidated v. Burnet, 286 U.S. 417, upon which respondent places his reliance, is distinguishable on the same ground as was United States v. Safety Car Heating & Lighting Company, 297 U.S. 88 in First Mechanics Bank v. Commissioner, supra, 280. "No partnership or joint venture existed in that case and the provisions of the statute making partners liable for their share of the profits received by the partnership, whether or not distributed, were not applicable. In the case at bar the fact that a controversy arose between the joint venturers did not change the fact that profits, taxable income, had been received * * * by the partnership." It accordingly appears too clear for serious dispute that the joint venture being a mere tax-computing intermediary, *116 and the real recipients of the income for tax purposes being its members, it made no difference that the managing co-adventurer withheld delivery of petitioner's share during the tax year or whether this was of its own volition or due to a dispute as to ownership or pursuant to the operation of the law. Petitioner's obligation was to report this income when she did and the statute of limitations against respondent began to run at that time. First Mechanics Bank v. Commissioner, supra, 279. We would be the first to complain, and not without justification, if performance of that obligation had been omitted. But we fail to see any ground for his present position. Due to other now undisputed items, Decision will be entered under Rule 50.