STATE OF NEBRASKA V. AMERICAN STATE BANK.
E. J. KREMER, APPELLEE, V. A. F. ACKERMAN, RECEIVER,
APPELLANT.

FILED MARCH 28, 1922. No. 21980.

1. Banks and Banking: MISAPPROPRIATION OF FUNDS: IMPUTED KNOWLEDGE. Where an authorized officer of a banking corporation, acting in its interests as its sole representative, procures, while absent from the bank, specific funds, pursuant to a previous arrangement, for the special purpose of paying notes of the maker to the bank and refunding the surplus and returns to the bank, and for it receives and accepts such funds, the officer's knowledge of the transactions may be imputed to the bank, though the funds are wrongfully deposited and wrongfully checked out in the name of another corporation of which such officer is manager.

2. ——: ——: CANCELATION OF NOTES. Where a bank knowingly receives and accepts from the maker of notes payable to and held by it a specific fund for the purpose of paying them at maturity, they may be canceled thereafter in the hands of a receiver of the bank, though the funds were wrongfully disbursed and the notes were allowed to remain in the bank uncanceled.

3. ——: ——: ——: DISPOSITION OF SURPLUS. Where a bank knowingly receives and accepts from the maker of notes payable to and held by it a specific fund for the purpose of paying them at maturity and of refunding the surplus, the surplus may be treated and protected as a deposit.

APPEAL from the district court for Hamilton county: EDWARD E. GOOD, JUDGE. *Affirmed.*

*Charles E. Matson,* for appellant.

*Hainer, Craft & Edgerton, contra.*

Heard before MORRISSEY, C. J., ALDRICH and ROSE, JJ., HOBART and PAINE, District Judges.

ROSE, J.

This is a controversy between A. F. Ackerman, receiver of the American State Bank of Aurora, an insolvent corporation, and E. J. Kremer, claimant, as a depositor.

In a proceeding by the state of Nebraska to wind up the

affairs of the bank, Kremer filed a claim in which he demanded the surrender of a note in the hands of the receiver and the return of a surplus of $340.50 arising from a fund in the nature of a special deposit. The face of the note is $7,000. It is dated March 1, 1920. It was payable 30 days after date. Claimant is the maker and the bank is named as payee. Payment out of funds raised by claimant for that purpose and deposited in the bank is pleaded. The receiver resists the claims on the grounds that the note is a valid asset of the bank and that there is nothing due claimant as depositor or creditor. In a cross-petition the receiver demands judgment on the note. Upon a full hearing the district court found that the note should be marked paid, and in addition that claimant should recover $340.50. From a decree in favor of claimant on both items, the receiver has appealed.

For the purpose of determining the questions presented by the appeal, a more detailed statement of the facts is necessary. In this connection the business relations of the parties to each other are material factors.

Kremer was a dealer in real estate and a salesman for real estate brokers.

The Wentz Company was a corporation dealing in real estate, farm loans, mortgages and insurance at Aurora, Nebraska.

The American State Bank was organized as a commercial enterprise March 8, 1918. An officer of the state took charge of it in an insolvent condition March 17, 1920. Ackerman took possession as receiver May 14, 1920. The bank has not since been open for the transaction of a general banking business.

In some capacity Charles W. Wentz had exclusive control and management of the Wentz Company. He was also vice-president of the bank and as manager controlled generally its business affairs. It had a president in name only and a cashier, but the latter recognized Wentz as the superior officer and deferred to him. The business of both

corporations was generally transacted in the same building with Wentz the controlling spirit in both enterprises. The transactions of the two corporations were more or less intermingled. Their books were kept by the same persons and the office, counter, vault and safe were used in common. Kremer in his own name never had a checking account in the bank, but at different times for a number of years he had transacted business with the Wentz Company or with Wentz.

Through the agency of the Wentz Company, Kremer bought a farm, made a payment thereon in cash, and agreed to pay the vendor $25,000, the balance of the purchase price, March 1, 1920, expecting then to realize funds for that purpose out of the proceeds of another farm which he had sold, but from this source money to the extent of $15,000 did not become available until March 15, 1920. Kremer, however, met his obligation to his vendor at maturity by raising funds in the following manner:

Negotiating with Wentz in the American State Bank, Kremer indorsed and delivered a check for $10,810, which had been issued to him by the Farley Investment Company to apply on the purchase price of the farm which he had sold. The check was indorsed by the bank and paid without bearing the indorsement of the Wentz Company. In addition, at the same time, Kremer, to procure $14,190 to pay the balance of his indebtedness of $25,000 to his vendor, applied to the bank for a loan. To serve some purpose of the Wentz Company or of Wentz, the latter, instead of taking a single note for $14,190, took two notes due 30 days after date, one for $7,190, payable to the Wentz Company, and the other for $7,000, payable to the bank. Kremer signed and delivered both and was directed by Wentz to pay the bank the amount to become due on each. These notes and the check for $10,810, aggregating $25,000, were all dated March 1, 1920. The same day the bank credited the account of the Wentz Company $25,000, a deposit made up of the check and the two notes described. Kremer, as

part of the transaction resulting in the loan, relying upon Wentz in his capacity of banker, entered into a definite arrangement with him to turn over to the bank, as soon as available, the balance of the proceeds of the farm which Kremer had sold, and at the same time Wentz agreed, upon receipt of such proceeds, to cancel both notes and return them to Kremer with the surplus. Kremer, for the special purpose stated, ordered the Farley Investment Company to turn over to Wentz the balance of the purchase price due from Kremer's vendee. In this state of affairs Kremer started to California March 12, 1920. Three days later Wentz left his bank, went a block or more to the office of the Farley Investment Company and procured the check of the latter for $15,000, payable to the order of "Charles W. Wentz & Co." This check was indorsed by the Wentz Company to the bank. It was indorsed also by the bank and later marked "Paid." Wentz deposited the check in his bank to the credit of the Wentz Company. The note of Kremer for $7,190 was afterward canceled and returned to him, but his note for $7,000 was not canceled or returned, and is the note in controversy. When the state took charge of the bank in an insolvent condition, the checking account of the Wentz Company was overdrawn. Kremer's note for $7,000 subsequently fell into the hands of the receiver.

The principal argument of the receiver is directed to the proposition that, for the purpose of procuring from the Farley Investment Company the check for $15,000 and disbursing the proceeds thereof, the Wentz Company and Wentz were agents of Kremer. On this point attention is called to the fact that Wentz left the bank, procured the check while absent and deposited it in the name of the Wentz Company. It is insisted that in these transactions Wentz did not act for the bank or in its interests, and that the proceeds of the check for $15,000 were received and paid out by the bank in good faith without actual or imputable knowledge of Kremer's equities. In this con-

nection the receiver invokes the principle that a bank is not liable for money entrusted to an officer for deposit while absent from his place of business, unless it is received by the bank and deposited to the credit of the proper account. For a number of reasons it seems clear that the present case is not controlled by the doctrine invoked.

The connection of the bank with these transactions did not begin when Wentz left his place of business to procure the check for $15,000 issued by the Farley Investment Company. Kremer had previously obtained a loan from the bank under an agreement to pay his notes out of a special fund. This was a transaction to which the bank was itself a party. Thus far questions of agency and knowledge do not arise. There is no lawful way for the bank to escape knowledge of what its managing officer had done in lending its money to Kremer, in taking notes for the amount lent and in arranging for payment out of special funds. The obligation of the bank to apply the balance of the proceeds of the farm sold by Kremer, when received, to the payment of his notes was part of the agreement for the loan. It was only through the agency of some officer that this agreement could be made and performed on the part of the bank. The income from loans is a source of profit. A bank is interested in a borrower's means for the payment of debts. A cashier or a vice-president may officially and properly leave his bank to perform a contract for his principal or to procure collateral for a loan or funds to pay notes.

· Kremer was on his way to California. He had made an arrangement with the bank for the payment of his notes. He did not know what was taking place in the bank, but its officer Wentz did. During all of the banking hours of March 15, 1920, the cashier was absent. There was then only one officer in charge, and that was Wentz, vice-president and managing officer. It was on this date that Wentz, pursuant to an arrangement to which the bank was itself a party, procured funds of Kremer to the

extent of $15,000 for a special purpose and deposited them
in the bank. Its only source of knowledge respecting these
transactions when they occurred was the agency of its
officer Wentz. Through that same source the bank had
lent Kremer money under a distinct arrangement that it
should be repaid from the proceeds of a farm. Kremer
complied with his agreement without any wrongdoing,
and by order in writing and by oral instructions made the
proceeds available. Wentz, as the sole representative of
the bank, received and accepted for it those proceeds in
the form of a check. This was the act of the bank and
could be performed only by an officer or agent of the
bank. Kremer had no power to appoint an officer or select
an agent for the bank to perform for it a service like that.
Wentz knew all about the facts and, being the sole repre-
sentative of the bank for the purpose of receiving and ac-
cepting the check for deposit, the bank should not be per-
mitted to renounce his agency and knowledge for the pur-
pose of escaping responsibility for an unauthorized dis-
bursement.

This case seems to fall within an exception to the gen-
eral rule relating to imputed knowledge. Where an au-
thorized officer of a banking corporation, acting in its in-
terests as its sole representative, procures, while absent
from the bank, specific funds, pursuant to a previous ar-
rangement, for the special purpose of paying notes of the
maker to the bank, and refunding the surplus, and in that
capacity, for the bank, receives and accepts such funds, the
officer's knowledge of the transactions may be imputed to
the bank. On the established facts the bank has no lawful
way to escape the agency of Wentz or his knowledge of the
transactions of March 15, 1920. Both agency of Wentz
and knowledge of the bank are established by uncontra-
dicted evidence.

The receiver argues further that Kremer, as a depositor,
is not entitled to recover the surplus of $340.50. The pro-
ceeds of the check from which this surplus arose went into

the bank in the nature of a special deposit for the purpose already stated. The deposit was received and accepted by the only officer in charge of the bank at the time. Knowledge of these banking transactions could only reach the bank through Wentz. He had participated in the arrangement requiring Kremer to pay his notes with the proceeds of his farm. The entries on the books were the doings of the bank in the absence of Kremer. As between the bank and Kremer those entries did not change the character of the transactions or relieve the bank from liability for a proper disbursement of the funds received by it through the agency of Wentz. Under the circumstances there could be no lawful disbursement except to apply the necessary amounts to the payment of the notes, mark them paid, and return them to Kremer with the surplus. In law and equity, the balance of Kremer's funds, having gone into the bank in the nature of a special deposit, should be protected as a special deposit.

No error has been found, and the judgment is

AFFIRMED.