State v. American State Bank.

STATE OF NEBRASKA V. AMERICAN STATE BANK.
EDITH MAUDE SHEAR ET AL. APPELLEES, V. A. F. ACKER-
MAN, RECEIVER, APPELLANT.

FILED MARCH 28, 1922. No. 22184.

1. **Bankruptcy: PREFERENCES.** Where a creditor, to secure a debt, procures from an insolvent debtor, within four months of the filing of a petition in bankruptcy, the assignment of a secured note, without actual knowledge of the insolvency, but with notice of facts sufficient to put the creditor on an inquiry which, if pursued, would lead to such knowledge, the assignment may be declared void under the federal bankruptcy act, if the effect of the transfer is to create in favor of the creditor a preference through which he would obtain a greater percentage of his debt than other creditors of the same class.

2. ———: ———: NOTICE. "If a debtor who is insolvent pays or secures one of his creditors, such creditor is chargeable with notice of such facts as a reasonable inquiry, in view of the circumstances with respect to the debtor's insolvency which were brought home to him, might fairly be expected to disclose." *Walter v. National Fire Ins. Co.*, 101 Neb. 639.

APPEAL from the district court for Hamilton county: GEORGE F. CORCORAN, JUDGE. *Affirmed.*

*Charles E. Matson* and *Clarence G. Miles,* for appellant.

*Hainer, Craft & Edgerton, contra.*

Heard before MORRISSEY, C. J., ALDRICH and ROSE, JJ., HOBART and PAINE, District Judges.

ROSE, J.

This is a controversy between A. F. Ackerman, receiver of the American State Bank of Aurora, Nebraska, an insolvent corporation, and Edith Maude Shear, Sarah Moore, and M. F. Stanley, trustee in bankruptcy for the Wentz Company, claimants. The property involved is a secured purchase money note for $10,000 in the hands of the receiver.

Through the agency of the Wentz Company, claimant

Edith Maude Shear sold a tract of land in Hamilton county to Homer F. Reichardt for $13,333.34. The purchaser paid in cash $3,333.34 and the balance of $10,000 was paid with a note secured by a mortgage on the land sold. Charles W. Wentz, managing officer of both the bank and the Wentz Company, was named in the note as payee. Claimant Edith Maude Shear has never received all of the purchase money, nor has she obtained possession of the purchase money note or an assignment thereof. At the time of the sale her land was incumbered by a prior mortgage, and claimant Sarah Moore was then the owner of a bond for $1,000 thus secured. Wentz had released the pre-existing mortgage, including the lien of Sarah Moore, but she never received the amount due on her bond. In this condition of affairs the Wentz Company failed, and M. F. Stanley became its trustee in bankruptcy, claiming that the purchase money note for $10,000, payable on its face to Charles W. Wentz, was an asset of the bankrupt estate of the Wentz Company, and that the transfer under which the receiver holds it created an avoidable preference within the meaning of the bankruptcy act.

In a proceeding by the state of Nebraska to wind up the affairs of the insolvent American State Bank of Aurora, Nebraska, claimants, by formal pleas in equity, presented separately the following: Claim of Edith Maude Shear to be restored to her rights under the purchase money note for $10,000, payable on its face to Charles W. Wentz; claim of Sarah Moore for the establishment of a lien for $1,000 and interest on the 10,000-dollar purchase money note and mortgage in lieu of the prior lien released by Wentz; claim of the trustee in bankruptcy for the restoration of the 10,000-dollar purchase money note as an asset of the bankrupt estate of the Wentz Company.

The receiver objected to all the claims on the ground that he is an innocent holder of the 10,000-dollar purchase money note by virtue of an assignment made by Wentz, payee, to protect an overdraft of the Wentz Company in

the American State Bank.

The trial court found that the receiver was not an innocent holder of the purchase money note and that it was not an asset of the insolvent bank; that the Wentz Company had paid liens and debts for Edith Maude Shear to the amount of $6,719.13, and that there was due her from the proceeds of her land a balance of $3,614.21, and that she was entitled to a lien on the 10,000-dollar purchase money note to that extent; that the claim of Sarah Moore should be allowed; that the trustee in bankruptcy, after payment of the claims of Edith Maude Shear and Sarah Moore, was entitled to the balance of the funds arising from a sale of the purchase money note. The receiver was directed to sell it and pay the proceeds into court for disbursement according to the findings of the trial court. From this judgment the receiver has appealed.

The controlling question on appeal arises from a traversed plea by the receiver that he is an innocent holder of the note in controversy and from the evidence on that issue. This question requires a more detailed statement of the facts.

The American State Bank commenced business as a commercial enterprise March 8, 1918. An officer of the state took charge of it in an insolvent condition March 17, 1920, and was succeeded by Ackerman, receiver, May 14, 1920. The bank has not since been open for the transaction of a general banking business.

The Wentz Company was a corporation dealing in real estate, farm loans, mortgages and insurance.

Charles W. Wentz was vice-president and managing officer of the bank. It had a president in name only. It had a cashier, but he recognized Wentz as the superior officer and deferred to him. In some capacity Wentz had exclusive control and management of the Wentz Company. The business of both corporations was generally transacted in the same building with Wentz the controlling spirit in both enterprises. The transactions of the corporations

were more or less intermingled. The bookkeepers in the bank kept the books for the Wentz Company. The two corporations occupied the same room and used the same counter, the same vault and the same safe. Each paid half the office rent. The officers of the Wentz Company were officers of the bank. The Wentz Company had kept a checking account in the bank, but it was overdrawn more than $20,000 when the bank failed.

The 10,000-dollar purchase money note was traced into the hands of the receiver in the following manner: When the account of the Wentz Company was heavily overdrawn and the bank itself was in danger of going to the wall March 15, 1920, Wentz took the note to Lincoln and Omaha intending to use it for the benefit of the bank and the Wentz Company in raising money to apply on the latter's overdraft. While he was a drunken, nervous wreck in Omaha he there entrusted the note to his wife. Missed from his bank, officers of the state department of trade and commerce followed him and promptly found him. In Omaha the state sheriff took the note from the wife of Wentz in the latter's absence and gave it to the secretary of the state department of trade and commerce, to whom it was subsequently assigned by Wentz while in a hospital in Lincoln. By mesne transfers through successive representatives of the assignee, who is secretary of the state department of trade and commerce, the receiver procured the note. Assuming that the secretary and other officers of that department knew nothing about the rights or the equities of claimants or of the insolvency of the Wentz Company, when the assignment was made, is the receiver an innocent holder?

Though the secretary of the state department of trade and commerce was prompted by good motives and a sense of public duty, his view of the assignment, as presented by the receiver, cannot be adopted. The effect of the assignment was to create a voidable preference by the Wentz Company in favor of the American State Bank, within the

meaning of the federal bankruptcy act. Proper deductions from the evidence are that the Wentz Company was insolvent when Wentz made his assignment, which was within four months of the filing of the petition in bankruptcy, and that the effect of the assignment was to create in favor of the bank a preference through which it would obtain a greater percentage of its debt than other creditors of the same class. Wentz had been the managing officer of both the bank and the Wentz Company. He owned all the stock of the Wentz Company and for all practical purposes he was the company itself. He knew all about the affairs of both corporations. The assignee, acting for and in the interests of the bank, was the secretary of the banking department of the state. He had supervisory control over the bank. He knew, or was chargeable with knowledge, that the account of the Wentz Company in the bank was overdrawn more than $20,000; that Wentz, the managing officer of both corporations, had been unable to raise money to protect the bank from the Wentz Company's overdraft; that a representative of the banking department was in charge of the bank in the absence of Wentz. The assignee knew that his official position and his superior means of acquiring knowledge of the condition of both corporations gave him an advantage over other creditors of the Wentz Company. If the assignee did not know the Wentz Company was insolvent, and if, by the course pursued by him, he hoped to save the bank, he nevertheless had notice of facts sufficient to put him on an inquiry which, if pursued, would have led to the truth—the insolvency of the Wentz Company. The circumstances and conditions are such as to call for the cancelation of the assignment as a voidable preference under the federal bankruptcy act. 9 U. S. Comp. St. 1916, sec. 9644, a-b, pp. 11538, 11539; *Walter v. National Fire Ins. Co.*, 101 Neb. 639. In this view of the law there is no error in the judgment below.

AFFIRMED.