STATE OF NEBRASKA V. AMERICAN STATE BANK.
ROSE GEORGE, INTERVENER, APPELLEE, V. A. F. ACKERMAN,
RECEIVER, APPELLANT.

FILED MARCH 28, 1922.   No. 22185.

Banks and Banking: .NOTES: INNOCENT HOLDER. Where a banking corporation is chargeable with knowledge that a note, payable on its face to the individual who is its managing officer, is trust property of another person for whom such individual is trustee, neither the bank nor the secretary of the state banking department can become an innocent holder of the note by assignment of the trustee for the purpose of paying with the trust property an overdraft in the bank by another corporation of which such trustee is also manager.

APPEAL from the district court for Hamilton county: GEORGE F. CORCORAN, JUDGE.   *Affirmed.*

*Charles E. Matson,* for appellant.

*Fred W. Ashton,* contra.

Heard before MORRISSEY, C. J., ALDRICH and ROSE, JJ., HOBART and PAINE, District Judges.

ROSE, J.

This is a controversy between A. F. Ackerman, receiver of the American State Bank of Aurora, Nebraska, an insolvent corporation, and Rose George, claimant.

In the hands of the receiver there are three unmatured promissory notes for $1,000 each, payable on their face to Charles W. Wentz, executed by Jesse Evison and wife, and secured by first mortgage on a section of land in Sedgwick county, Colorado.  For $3,000 claimant purchased the notes and the mortgage from Wentz March 2, 1920, but she never obtained possession of them.  Wentz took them and assigned and delivered them to the secretary of the state department of trade and commerce March 22, 1920, to apply on an overdraft of the Wentz Company in the bank.

In a proceeding by the state of Nebraska to wind up the affairs of the bank, claimant by formal pleas presented a claim for an order on the receiver to restore to her the notes and mortgage. The receiver pleaded that they were assets of the insolvent bank and that they were in his hands as an innocent holder. The trial court found the issues in favor of claimant and ordered the receiver to turn them over to her and to cancel the assignments under which he received and held them. From this judgment the receiver appealed.

Is the receiver an innocent holder within the meaning of the negotiable instruments law?

Claimant bought the notes and the mortgage from Charles W. Wentz in the American State Bank March 2, 1920. Her father was a depositor therein and then gave her a check on that bank for $3,000. She indorsed it and handed it to Wentz, who gave her the receipt of the Wentz Company, reciting that the check was payment for the notes and the mortgage. He said he would give them to her in a few days. She has never received them, nor has any part of her money been refunded, though the check was paid and the proceeds went into the bank to the credit of the Wentz Company.

The American State Bank commenced business as a commercial enterprise March 8, 1918. An officer of the state took charge of it in an insolvent condition March 17, 1920, and was succeeded by Ackerman, receiver, May 14, 1920. The bank has not since been open for the transaction of a general banking business.

The Wentz Company was a corporation dealing in real estate, farm loans, mortgages and insurance. Its account in the bank was overdrawn more than $20,000 when the bank failed.

Charles W. Wentz was vice-president and managing officer of the bank. It had a president in name only. It had a cashier, but he recognized Wentz as the superior officer and deferred to him. In some capacity Wentz had ex-

clusive control and management of the Wentz Company. He owned all of its stock and for practical purposes was the company itself. The business of both corporations was generally transacted in the same building with Wentz the controlling spirit in both enterprises. The transactions of the corporations were more or less intermingled. The bookkeepers in the bank kept the books for the Wentz Company. The two corporations occupied the same room and used the same counter, the same vault and the same safe. Each paid half the office rent. The officers of the Wentz Company were officers of the bank. There was no public sign to identify the corporate hand that accepted funds for the Wentz Company or manipulated the business devices used by Wentz in disbursing funds for the bank.

Claimant was not an expert in high finance. With a 3,000-dollar check which her father had given her she went into the bank to invest her money in the three notes and the mortgage for that sum. The check was payable to her. She indorsed her name on the back of it and gave it to Wentz. She did not name the bank or Wentz or the Wentz Company as indorsee. She was told by Wentz that the paper she had bought would be delivered to her in a few days. She did not separately distinguish Wentz as an individual, Wentz as the Wentz Company, and Wentz as the bank, with his corporate medium of knowledge for the purpose of getting money into the bank and with his private ignorance for the purposes of disbursement. She did, however, stand in an open bank with a charter from the state. In common with the public at large she was impressed with the high standing won by banks generally through long periods of business rectitude. She thought she was leaving her check in the bank in a form available for her purchase upon delivery of the notes and the mortgage which she had bought in the bank while dealing with Wentz, the managing officer of the bank. The appearance justified her confidence.

The notes were traced into the hands of the receiver in

the following manner: When the account of the Wentz Company was heavily overdrawn and the bank itself was in danger of going to the wall March 15, 1920, Wentz took claimant's notes to Lincoln and Omaha intending to use them for the benefit of the bank and the Wentz Company in raising money to apply on the overdraft of the latter. While he was a drunken, nervous wreck in Omaha, he there entrusted the notes to his wife. Missed from his bank the state department of trade and commerce followed him and promptly found him. In Omaha the state sheriff took the papers from the wife of Wentz in his absence and gave them to the head of the state department of trade and commerce, to whom they were assigned March 22, 1920, by Wentz, while in a hospital in Lincoln. By mesne transfers, through officers representing the state department of trade and commerce, the receiver procured them. Assuming that those officers did not know that the notes belonged to claimant or that Wentz held them as trustee for her, was the receiver an innocent holder with authority to pay the debts or overdraft of the Wentz Company with the property of claimant? If the bank itself was chargeable with previous knowledge of the facts or was chargeable with the knowledge of Wentz, the question must be answered in the negative.

The secretary of the state department of trade and commerce acted in an official capacity when he took the assignment. As an individual he had no interest in the transaction. He was prompted by a sense of public duty in the hope of saving a bank over which he had officially a supervisory control. The assignment therefore was accepted in the interest of the bank. The official representatives, through whom the notes were transferred to the receiver, acted in the same capacity as the secretary of the state department. In taking this paper at the time, under the circumstances, they were chargeable with previous knowledge imputable by law to the bank itself, while open for the transaction of banking business. If, however, an of-

ficer of the state department could by assignment acquire in the notes a right not available to the bank itself while solvent, the assignment would be a voidable preference under the federal bankruptcy act. *Shear v. Ackerman, ante, p.* 119.

From the moment Wentz appropriated the check, assuring claimant that the notes would be delivered to her in a few days, he was her trustee for the purpose of holding her property and delivering it to her. As the sole controlling officer of the bank at the time, he directed it to receive and accept as a deposit in the name of the Wentz Company the check with which the notes were bought. As such officer he knew all about the facts. The effect was to reduce the overdraft of the Wentz Company $3,000 with the money of claimant. The business was transacted in such a manner and under such circumstances that the bank had no lawful way to escape either the agency or the knowledge of Wentz. He was claimant's trustee at the time. Knowledge of that fact was imputable to the bank. It could not become an innocent purchaser or holder of claimant's notes to pay an overdraft of the Wentz Company. The officers of the state department of trade and commerce and the receiver were in no better situation. There was no innocent holder and the notes were not assets of the bank. There are other reasons for reaching the same conclusion, but they need not be discussed. Equity traced the trust property without change in form from Wentz into the hands of the receiver and will restore it to the beneficial owner, the claimant.

AFFIRMED.