STATE, EX REL. CLARENCE A. DAVIS, ATTORNEY GENERAL, V. PEOPLES STATE BANK OF ANSELMO.
W. L. MCCANDLESS, COUNTY TREASURER, APPELLEE, . V. STATE OF NEBRASKA ET AL., APPELLANTS.

FILED NOVEMBER 16, 1923. No. 23328.

Banks and Banking: GUARANTY FUND: LIABILITY. Where a county treasurer, in violation of section 6193, Comp. St. 1922, deposits county funds in a state bank, in excess of 50 per cent. of the capital stock of such bank, the depositors' guaranty fund is not liable for such excess.

APPEAL from the district court for Custer county: BRUNO O. HOSTETLER, JUDGE. Reversed.

*O. S. Spillman, Attorney General,* and *Sullivan, Squires & Johnson,* for appellants.

*Jacob Fawcett* and *N. T. Gadd, contra.*

*William C. Schaper* and *Halligan, Beatty & Halligan, amici curiæ.*

Heard before MORRISSEY, C. J., LETTON, DEAN, DAY and GOOD, JJ., REDICK and SHEPHERD, District Judges.

DAY, J.

The Peoples State Bank of Anselmo, Custer county, Nebraska, hereinafter referred to as the "bank," was a duly organized banking corporation under the laws of this state, with a capital stock of $15,000. The bank became insolvent, and on June 9, 1921, a receiver was duly appointed to wind up its affairs. At the time the bank failed, W. L. McCandless, as county treasurer of Custer county, had on deposit therein $44,000. As county treasurer, McCandless duly filed a claim for this amount with the receiver, asking that it be allowed and paid out of the depositors' guaranty fund of the state. The attorney general, in behalf of the department of trade and commerce, objected to the payment of the full amount out of the guaranty fund, but conceded that the guaranty fund was liable to the claimant for $7,500, being 50 per cent. of the capital stock of the bank. An arrangement was made by which the sum of $7,500 was paid forthwith out of the guaranty fund. As to the remainder, to-wit, $36,500, an issue was tendered by the state and the receiver, denying the liability of the guaranty fund for reasons which will hereinafter be discussed. The trial resulted in a judgment in favor of McCandless. An order was made by the court directing the department of trade and commerce to pay to the receiver $36,500 out of the depositors' guaranty fund, and that the receiver pay that amount to W. L. McCandless, county treasurer, for the use and benefit of Custer county. From this judgment the state and the receiver have appealed.

The important question presented by the record is wheth-

128          NEBRASKA REPORTS          [VOL. 111

State, ex rel. Davis, v. Peoples State Bank.

er the guaranty fund is liable for the payment of the amount deposited in the bank by the county treasurer in excess of 50 per cent. of the capital stock of the bank. A determination of this question involves an examination of several statutory provisions.

Sections 6191 and 6193, Comp. St. 1922, in force at the time of the transaction now under consideration, among other things, provide:

Section 6191: "It shall be the duty of the county board to act on such application or applications of any and all banks, state, national or private, as may ask for the privilege of becoming the depository of such moneys, as well as to approve the bonds of those selected incident to such relation, and the county treasurer shall not deposit such money or any part thereof in any bank or banks other than such as may have been so selected by the county board for such purposes, if any such bank or banks have been so selected by the county board. * * * And where more than one bank may have been so selected by the county board for such purpose, he shall not give a preference to any one or more of them in the money he may so deposit, but shall keep deposited with each of said banks, such a part of the moneys as the paid-up capital stock of such bank is a part of the amount of all the paid-up capital stock of all the banks so selected, so that such moneys may at all times be deposited with said banks pro rata as to their paid-up capital stock."

Section 6193: "For the security of the funds so deposited under the provisions of this article the county treasurer shall require all such depositories to give bonds for the safe-keeping and payment of such deposits and the accretions thereof, which bond shall run to the people of the county and be approved by the county board and conditioned that such depository shall, at the end of each and every month, render to the treasurer and county board a statement in duplicate, showing the several daily balances and the amounts of moneys of the county held by it during the month, and the amount of the accretion thereof,

and how credited. * * *   No person in any way connected with any depository bank as officer or stockholder shall be accepted as a surety on any bond given by said bank. * * * The treasurer shall not have on deposit in any bank at any time more than the maximum amount of the bond given by said bank in cases where the bank gives a guaranty bond, nor in any bank giving a personal bond more than one-half of the amount of the bond of such bank, and the amount so on deposit at any time with any such bank shall not in either case exceed fifty per cent. of the paid-up capital stock of such bank. * * *   Where banks located in the county refuse or neglect to bid on said money, or where there are not banks in the county, or where the banks located in the county have not sufficient capital stock to receive said money, * * * then any surplus over the fifty per cent. that banks in the county may receive shall be deposited in banks outside of the county having sufficient capital stock under the same conditions and terms as if in the county."

These sections of the statute in their present form are the outgrowth of prior legislation relating to the general subject of depositing state and county funds. The first act was passed in 1891. It required the county treasurer to deposit and at all times keep on deposit for safe-keeping in the state or national banks doing business in the county money belonging to the several current funds of the county. Section 8 of this act provided that banks desiring to become depositories should give bond for the safe-keeping and payment of deposits and accretions thereof, and limited the amount that the treasurer should have on deposit in any bank at any one time to one-half the amount of the bond given by the bank. Laws 1891, ch. 50. In 1907 section 8, above referred to, was amended, limiting the amount which might be deposited by the treasurer, so that it should not exceed 50 per cent. of the capital stock of the bank in which the deposit was made. Laws 1907, ch. 39. This same section was again amended in 1909 (Laws 1909, ch. 35) and, as amended, comprises section 6193, Comp. St. 1922. In 1909 the legislature passed an act, the outstanding fea-

130 NEBRASKA REPORTS [Vol. 111

State, ex rel. Davis, v. Peoples State Bank.

tures of which were provisions for the regulation, supervision and control of the banks organized under the laws of the state, and the establishment of a guaranty fund for the protection of depositors. By this act the general supervision of the state banks, and the administration of the guaranty fund which was raised by an assessment upon all of the state banks, was placed in the hands of the state banking board. Laws 1909, ch. 10. By later enactment the supervision of banks and the administration of the guaranty fund is placed in the hands of the department of trade and commerce. In 1911 (Laws 1911, ch. 8) the legislature amended several sections of the act of 1909, among them section 46, now section 8027, Comp. St. 1922. The amendment, so far as pertinent to the question now in hand, is as follows: "No bank which has complied in full with all of the provisions of this article shall be required to give any further security or bond for the purpose of becoming a depository for any public funds, but depository funds shall be secured in the same manner that private funds are secured." It will be observed that section 6193, Comp. St. 1922, above quoted, not only provides that banks desiring to become depositories of public funds shall give bond for the safe-keeping and payment of money deposited by the county treasurer, but also places a limitation upon the amount which a county treasurer may legally have on deposit in any bank at any one time. The limitation of the amount is fixed by clear language. In precise terms it states: "And the amount so on deposit at any time with any such bank shall not in either case (referring to the kind of bond given) exceed fifty per cent. of the paid-up capital stock of such bank."

It is urged by the appellee, however, that the effect of section 8027, Comp. St. 1922, is to repeal the provisions of section 6193, in so far as it relates to state banks. The argument is made that the substitution of the guaranty fund as provided in section 8027, in lieu of the bond required in section 6193, by implication repeals that part of section 6193 limiting the amount of deposits to 50 per cent.

of the paid-up capital stock of such banks. We think it must be admitted that sections 6193 and 8027 are *in pari materia,* and in any event must be construed together. An examination of the two sections shows that the only provisions thereof wherein there is an inconsistency is that relating to the giving of a bond. Section 6193 clearly provides for the giving of bonds by state as well as national banks. Section 8027 provides that state banks which have complied with the provisions of the act (relating to filing with the department certain statements) shall not be required to give any further security or bond. The relation of these two sections was considered by this court in *State v. Hevelone,* 92 Neb. 748. In that action the bank sought a writ of mandamus against the county treasurer to require him to deposit with the relator its pro rata share of the county money, as provided in section 6191, without relator giving a bond as provided in section 6193. The court said: "By this amendment (amendment to section 8027, hereinbefore quoted) it is made clear that the legislature intended the provisions of the banking act requiring a depositors' guaranty fund should operate as a substitute for the approved security required by the depository act (section 6193), where the deposit is public funds." The court held that the provisions of section 8027 were inconsistent with so much of section 6193 as requires a bond to be given by state banks to secure the safe-keeping of deposits of public money, and to the extent that section 6193 requires a bond to be given by state banks, it was repealed by implication.

We are of the view that the provisions of section 6193, limiting the amount which a county treasurer may legally deposit in a bank to 50 per cent. of its paid-up capital stock, is still obligatory on the treasurer. This limitation was made for, and serves, a good purpose. If, then, the limitation is still effective, it follows as a matter of course that the deposits made by the treasurer in the bank in excess of $7,500 were in violation of the express terms of the statute.

The question then arises whether the guaranty fund is

liable for the payment of the excess. The liability of the
guaranty fund is somewhat analogous to the liability of a
surety or guarantor. As a surety or guarantor are not
liable beyond the terms of their contract, so the guaranty
fund is not liable beyond the terms of the statute which
is in point of law the contract. The guaranty fund is a
creature of the statute, and the legislature, by fair con-
struction of the statute, has fixed the conditions upon which
deposits in banks are protected. The guaranty fund is not
available as security in every case where money is put into
a bank. Its liability extends only to those transactions
which under the law may be said to be deposits. It is
not easy to frame a definition of what constitutes a de-
posit, which is within the protection of the guaranty law,
so as to meet the complexities in business affairs. Each
case must stand upon its own peculiar facts.

In a case decided at the present term, *State v. Farmers
State Bank, ante,* p. 117, it was held that, in order to create
a deposit which will be protected by the guaranty law, it
was necessary that money or its equivalent shall in inten-
tion and effect be placed in or at the command of the bank
under circumstances which do not transgress specific lim-
itations of the bank guaranty law.

In *Iams v. Farmers State Bank,* 101 Neb. 778, Iams de-
posited a sum of money in the bank and took a certificate
of deposit therefor which on its face drew interest at 5
per cent., the amount of interest which banks were permit-
ted to pay on time deposits. He had a secret agreement
with the bank by which he was paid a greater rate of in-
terest. The bank failed, and Iams sought to hold the guar-
anty fund liable for the payment of the certificate. It was
held that the transaction was not a deposit within the mean-
ing of the guaranty law, so as to render the guaranty fund
liable. In commenting upon the transaction, it was said:
"The act creating the depositors' guaranty fund was in-
tended by the legislature to be a shield of protection against
loss to those who in good faith deposit their money in state
banks in compliance with the terms of the statute."

The same principle was again announced in *State v. Banking House of A. Castetter*, 110 Neb. 564.

These cases are cited to show that not every deposit of money in a bank is a "deposit" within the meaning of that term in the guaranty fund law.

In determining the liability of the guaranty fund as applied to the facts before us, it seems that the several provisions of the statute hereinbefore referred to must be construed together. These provisions of the statute make the contract of liability. In effect they say that the treasurer may lawfully deposit public money in depository banks up to an amount of 50 per cent. of the paid-up capital of the bank; that deposits made in excess of the limitation are illegal; and that the guaranty fund is liable for deposits legally made. These provisions of the statute are binding on all the parties.

Some reference has been made to a series of cases entitled *State v. American State Bank*, 108 Neb. 92, 98, 111, 119, 124, and 129. There the facts were essentially different, and there was no limitation upon the amount of deposits which the depositor could make.

The appellant also bases an argument upon the theory that the treasurer violated the provisions of section 6191 in failing to prorate the county funds among the several banks of the county, as provided therein. We deem it unnecessary to prolong this opinion by a discussion of that proposition, as the view we have taken seems to be decisive of the question presented by the record.

The treasurer having deposited the county funds in the bank in violation of precise terms of the law, the excess so deposited is not entitled to the protection afforded to depositors by the guaranty law.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

GOOD, J., dissenting.

It seems that the majority opinion fails to give full force

134 NEBRASKA REPORTS [VOL. 111

State, ex rel. Davis, v. Peoples State Bank.

and effect to section 8027, Comp. St. 1922, and particularly to the last sentence of said section, in the following language: "No bank which has complied in full with all of the provisions of this article shall be required to give any further security or bond for the purpose of becoming a depository for any public funds, but depository funds shall be secured in the same manner that private funds are secured." The words, "secured in the same manner that private funds are secured," evidently signify that depository funds are to be secured by the depositors' guaranty fund. There is no limit to the amount a private individual or private corporation may deposit in a state bank, and all deposits, without limit as to amount, by private individuals or private corporations in state banks are protected by the guaranty fund. If public funds are secured in the same manner as private funds, then they are protected by the guaranty fund, regardless of the amount of such deposits, and it would be immaterial whether such deposits exceeded 50 per cent. of the capital stock of the bank.

The majority opinion seems to be grounded on the proposition that the guaranty fund is liable only where no law has been violated by the depositor in making the deposit. Followed to its logical conclusion, if a county treasurer should take the public funds in his charge to a state bank and deposit them in his individual name, though the amount of such deposit may not equal 50 per cent. of the capital stock of the bank, the guaranty fund would not be liable, because, by the very act of so depositing the fund in his name, he has violated the criminal law and made himself liable to prosecution for embezzlement. I do not think that such was the intention or purpose of the lawmakers. Even if a county treasurer, in making a deposit of public funds in his charge in a state bank in excess of 50 per cent. of the capital stock, has committed a breach of the depository law, still the bank violates no provision of law in receiving such deposit. The bank is authorized to receive deposits, and the law puts no restriction on the bank as to the amount of deposits it may receive. In the *Iams* case,

State, ex rel. Davis, v. Peoples State Bank.

referred to in the majority opinion, the bank was guilty of a direct violation of the depositors' guaranty fund law, and the depositor in that case was a party to and induced the violation by the bank. The fact should not be overlooked that the funds deposited in the bank, in the instant case, belong to the public and not to the county treasurer. A violation of the depository law by the treasurer should not deprive the public of the same protection and security that the depositors' guaranty fund affords to private funds.

It is argued that the amendment of 1909 to section 8027, Comp. St. 1922, which relieved state banks from the necessity of giving a bond to become depositories for public funds, had only the effect of substituting the guaranty fund as a surety. Granting, for the sake of the argument, that this is true (which, by the way, is not conceded), still, in the opinion of the writer, the guaranty fund would not be relieved from liability for a deposit of public funds in excess of 50 per cent. of the capital stock of the bank. A national bank is not subject to the guaranty law and must give a bond to become a depository of public funds. I can scarcely think that my associates, who concur in the majority opinion, would contend that the depository bond of a national bank would not be liable for a deposit by a county treasurer of public funds in such bank in an amount in excess of 50 per cent. of its capital stock. I think, in such case, that the liability would be for the whole amount of the deposit, but not exceeding the amount of the depository bond. If the guaranty fund is not liable for the deposit by a county treasurer of public funds in a state bank in excess of the 50 per cent. capital stock limitation, by what process of reasoning can it be contended that the depository bond of a national bank would be liable for a deposit in excess of the 50 per cent. capital stock limitation?

It seems clear that the holding of this court should be that the guaranty fund is liable for the entire amount of the deposit made by the county treasurer.

Morrissey, C. J., and Letton, J., concur in this dissent.

136        NEBRASKA REPORTS        [VOL. 111

State, ex rel. Davis, v. Peoples State Bank.

The following opinion on motion for rehearing was filed May 8, 1924. *Former judgment of this court vacated and judgment of the district court affirmed.*

1. **Banks and Banking:** GUARANTY FUND: LIABILITY. Where a county treasurer deposits public funds in a state bank in excess of 50 per cent. of the paid-up capital stock of said bank, the entire deposit is within the protection of the depositors' guaranty fund.

2. Opinion in *State v. Peoples State Bank, ante,* p. 126, vacated.

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, DAY and GOOD, JJ., REDICK, District Judge.

GOOD, J.

This case is now before us on rehearing. The opinion on the first submission of the case is reported, *ante,* p. 126.

This appeal presents for decision this question: Is the depositors' guaranty fund liable for a deposit of public funds in a state bank by a county treasurer in excess of 50 per cent. of the paid-up capital stock of the bank? In the majority opinion on the first hearing, the question is answered in the negative. The opinion is based on the propositions that the guaranty fund stands in the position of a surety or guarantor; that a deposit by a county treasurer of public funds in excess of the statutory limitation is illegal, and that the depositors' guaranty fund is liable only for deposits legally made.

For a better understanding of the facts and statutory provisions bearing on the question, reference is made to the former opinion in this case, where the pertinent legislation and the history of its enactment are set forth. After more extended argument and a thorough consideration of the question, a majority of the court now entertains a different view.

The question is largely controlled by determining the legislative intent and meaning of section 8027, Comp. St. 1922, which is in part as follows: "No bank which has complied in full with all of the provisions of this article

shall be required to give any further security or bond for the purpose of becoming a depository for any public funds, but depository funds shall be secured in the same manner that private funds are secured." For some years prior to the enactment of this section, no bank could lawfully become a depository of public funds unless it gave bond for the safe-keeping and return of such funds. See sections 6191, 6193, Comp. St. 1922. One of the aims and purposes of the legislature in enacting section 8027, *supra*, was to relieve state banks from the necessity of giving bond for the safekeeping and return of public funds therein deposited.

We think there is little or no doubt that the main purpose of the legislature in limiting the amount of public funds a county treasurer might deposit in any bank to 50 per cent. of its capital stock was to secure the greater safety and protection of public funds. By the enactment of the depositors' guaranty fund law, pursuant to the provisions of which all banks, organized under the laws of the state, become liable for assessments to create and maintain the depositors' guaranty fund, the legislature no doubt believed that ample protection and security would be furnished for any public funds deposited in state banks.

It might, with good reason, be urged that the legislature, in enacting section 8027, *supra*, intended to repeal the provisions of the depository law, in so far as it affected state banks, and to thereby remove any limitation as to the amount of public funds that a county treasurer could deposit in such banks. However, we do not find it necessary to so hold, to sustain our present view. Even if it be conceded that the depository statute, limiting the deposit of public funds in banks to 50 per cent. of the paid-up capital stock of such banks, has not been repealed by implication, so far as relates to state banks, we still feel confident that the proper construction of said section renders the guaranty fund liable for the deposit of all public funds, even though they are in excess of 50 per cent. of the paid-up capital stock. The latter part of said section provides that depos-

State, ex rel. Davis, v. Peoples State Bank.

itory funds (meaning thereby public funds) shall be secured in the same manner that private funds are secured. Private funds deposited in state banks are secured and protected by the depositors' guaranty fund, and there is no limit to the amount a private individual or°corporation may deposit in state banks. If public funds are secured in the same manner as private funds, then they too are protected by the guaranty fund, regardless of the amount thereof, and it would be wholly immaterial whether such deposits exceeded 50 per cent. of the paid-up capital stock of the bank.

It is argued that, if the county treasurer violated a statutory provision in making the excess deposit of public funds, then the excess was not a legal deposit and was not, therefore, protected. In support of this assignment, plaintiff cites and relies upon the decisions of this court in *Iams v. Farmers State Bank,* 101 Neb. 778, *State v. Banking House of A. Castetter,* 110 Neb. 564, *Cole v. Myers,* 100 Neb. 480, and *State v. Corning State Savings Bank,* 136 Ia. 79.

In the *Iams* case, money was placed in a state bank, and a certificate of deposit, bearing interest at 5 per cent. per annum, was issued to the purported depositor. In order to evade a provision of the guaranty fund law, limiting the rate of interest on time deposits to 5 per cent., the bank agreed to pay Iams a bonus of 1 per cent. per annum on the money. The bank was guilty of a direct violation of the guaranty fund law. Iams was a party to and induced the violation. Both parties participated in the unlawful act. It was held that the transaction was a loan, and did not constitute a deposit, within the meaning of the guaranty fund act, and that, where the bank failed, the certificate so obtained could not be paid out of the depositors' guaranty fund.

In *State v. Banking House of A. Castetter, supra,* interest on a deposit in the bank was calculated at the rate of 8 per cent. and added to the amount, and a cashier's check issued therefor. It was held, following the *Iams* case, that the holder was not entitled to the protection of the guaran-

State, ex rel. Davis, v. Peoples State Bank.

ty fund, because the inclusion of a greater rate of interest than 5 per cent. was in violation of the express prohibition contained in the depositors' guaranty fund law. *Cole v. Myers, supra,* involved the right of different sets of sureties to subrogation, and does not seem to have any application to the question presented in this case. In *State v. Corning State Savings Bank, supra,* a recovery was sought against a savings bank upon a certificate of deposit, but which, in fact, represented a loan to the bank, and not a deposit. It was held that where savings banks are prohibited by statute from borrowing money, but a loan is made to a savings bank and the indebtedness represented by a certificate of deposit, no recovery can be had upon the certificate itself.

We think none of these cases is applicable to the present situation. The depositors' guaranty fund law did not prohibit a treasurer from depositing public funds in a state bank in excess of 50 per cent. of its paid-up capital stock; nor was there any law forbidding state banks to accept such deposits. In this instance, an excess deposit was made in the bank, but no illegal or excessive rate of interest was agreed to be paid. It was in no sense a loan. If any wrongful act was committed, it was the act of the county treasurer alone. The funds deposited belonged not to him but to the public. The public was innocent of any wrongful act. It should not be deprived of the protection the law was intended to afford. The reasons, given in the cases referred to, for denying liability of the guaranty fund do not exist in this case. It may further be observed that the state is the custodian of, and has the legal title as trustee to, the depositors' guaranty fund, and is charged with its control, management and distribution through and by the department of trade and commerce. This same department is charged with the examination, regulation and control of all the state banks, and by its examiners had full knowledge, or the means of full knowledge, that the county treasurer, claimant in this case, was making deposits in the defendant bank in excess of 50 per cent. of its paid-up capital stock. It is a matter of common knowledge that such

State, ex rel. Davis, v. Peoples State Bank.

excess deposits are habitually and constantly being made by the county treasurers of the state, and yet the state has made no objection to such excess deposits, and, by its failure to object, has tacitly placed its approval upon such practice. It amounts to placing the same construction upon the statute by an administrative branch of the state government that is now placed upon it by this court.

The law prohibits state banks from making any loan in excess of a certain percentage of its paid-up capital stock and surplus; yet such loans are frequently made and their payment has always been, by this court, enforced whenever suit has been brought upon such loans. The argument of plaintiff, if carried to its logical conclusion, would deny the protection of the depositors' guaranty fund for any deposit that was made in violation of law. If a county treasurer should take the public funds and deposit them in a state bank in his individual name, he would thereby violate the law and make himself liable for criminal prosecution, but we think there can be no doubt that in such case the treasurer, or the county, as the beneficial owner of the fund, could claim the deposit and would be entitled to the protection of the depositors' guaranty fund. Such, in effect, was the holding of this court in the following cases: *State v. American State Bank*, 108 Neb. 92; *State v. American State Bank*, 108 Neb. 98; *State v. American State Bank*, 108 Neb. 111; *State v. American State Bank*, 108 Neb. 119; *State v. American State Bank*, 108 Neb. 124; *State v. American State Bank*, 108 Neb. 129.

We are forced to the conclusion that, where a county treasurer deposits public funds in a state bank in excess of 50 per cent. of the paid-up capital stock of said bank, the entire deposit is within the protection of the depositors' guaranty fund.

It follows that our former opinion in this case should be vacated. The judgment of the district court is

AFFIRMED.

Rose and Day, JJ., and Redick, District Judge, dissent for the reasons stated in the former opinion.