BEADLE COUNTY, Respondent, v. LLOYD, et al, Appellants.

(238 N. W. 133.)

(File Nos. 6814, 6816, 6817.   Opinion filed October 5, 1931.)

*Bailey & Voorhees,* of Sioux Falls, and *Ray F. Bruce,* of Milwaukee, Wis., for Appellants New Amsterdam Casualty Co., and Fidelity & Deposit Co., of Maryland.

*Benj. D. Mintener,* of Pierre, Assistant Attorney General, for Appellant State Bonding Department.

*W. W. Howes* and *Leo Temmey,* both of Huron (*Coe I. Crawford,* of Huron, of counsel), for Respondents.

WARREN, J. Action was brought upon the official bonds of defendant Carrie B. Lloyd, who was twice elected and served as treasurer of Beadle county for two terms (her first term beginning January 1, 1923); her second term began January 1, 1925. The New Amsterdam Casualty Company furnished surety in the sum of $100,000, the defendant Fidelity & Deposit Company $25,000, and the state bonding department of South Dakota for an additional sum of $25,000.

In December, 1925, when the county treasurer was serving her second term, the county commissioners of Beadle county demanded an accounting. The report of the accountant discloses that she was short $205,000, alleged due to the failure of five banks, in which she had carried deposits of the county funds. Four of these banks, at the time of their failure, aggregated in deposits the sum of $189,000, or an excess of $69,000 above 50 per cent of the combined capital and surplus of the bank. In the fifth bank the entire deposit, at the time of its failure, was $16,000, which was less than such 50 per cent.

The plaintiff, Beadle county, in April, 1926, commenced this action against the county treasurer and her surety and her several bonds to recover the alleged shortage. At the close of all the evidence, both parties moved for a directed verdict. The court directed a verdict in favor of the plaintiff for $77,920, and assessed the amounts of plaintiff's recovery against each of the several sureties within the limit of their several bonds plus interest. Upon the verdict, judgment was rendered against the several sureties, and from such judgment and order denying new trial the surety defendants appeal.

The appellants, through various forms of pleadings, motions, and objections, questioned the sufficiency of the complaint. We have carefully considered the arguments of appellants and that of respondent for the purpose of ascertaining how serious such alleged defects are. Upon an examination of the complaint, we must hold that it states a cause of action even as against all the various technical and substantial objections. It is argued that several items making up the shortage and when they occurred should be stated. However, appellants knew that the shortage was made up of deposits in the five closed banks and knew when each of those banks failed. In the view that we take, in construing the

complaint, it was not incumbent upon the plaintiff to plead what shortage, if any, occurred during the first term and what occurred during the second term. Each appellant was a surety on bonds which were the same in amount for each term.

The bond on which the Fidelity & Deposit Company was a surety for the first term was not signed by the principal, the county treasurer, and the surety contends that that bond is not binding upon it, but releases it from all responsibility. We believe that the case of Onida Independent School District v. Groth, 53 S. D. 458, 221 N. W. 49, where a similar contention was made, is binding upon the appellants. We are satisfied that the rule of law announced in that case is correct. Each surety, therefore, being on a bond for a like amount and each term, is liable to the amount of the bond, no matter in which term the shortage occurs.

The appellants have made strenuous objections to the bringing of the action without an order of the judge of the circuit court, insisting that such an order is mandatory under Revised Code 1919, §§ 6012, 6013, which provide that, whenever the state's attorney deems an action necessary to recover any money due the county from any person, he may present to the judge of the circuit court a summons and complaint in such matter and ask leave of the judge to bring and commence such action, and, if the judge thinks such an action is required for the protection of the county, he shall make an indorsement to that effect upon the summons, and thereupon the state's attorney shall have power to commence and prosecute such action. The appellants have urged the omission upon the theory that the complaint does not state facts sufficient to constitute a cause of action. The Montana Supreme Court, in dealing with the sufficiency of the complaint and the failure to plead matters such as complained of, has held that leave to sue is no part of the cause of action. Sweeney v. Schlessinger et al., 18 Mont. 327, 45 P. 213.

As to the authority of the board of county commissioners to institute and prosecute civil actions, we find section 5877, 1919 Revised Code, reads as follows: "Board of county commissioners shall have power to institute and prosecute civil actions in the name of the county, for and on behalf of the county." In construing the above statute this court, in Perkins County v. Nelson, 53 S. D. 514, 516, 221 N. W. 247, 248, said: "It is true that the com-

plaint does not allege that the county auditor, pursuant to section 6949, caused this action to be instituted, or received instructions from the county commissioners; but, in view of the express provisions of section 5877, we see no reason for alleging the acts of the county auditor."

The proof submitted to the court shows that the four banks in which the treasurer had deposited in excess of the combined capital and surplus when they failed were the James Valley Bank, the City National Bank, and the First National Bank, all of Huron, and the Broadland State Bank. The excess, as computed, amounted to as follows: James Valley Bank, $22,500; City National Bank, $10,000; First National Bank, $32,500; and in the Broadland State Bank, $4,000. Early in 1924 there were excess deposits of several thousand dollars in the James Valley Bank. The president of the bank solicited the treasurer to withdraw from the National Bank at Huron, which at the time had less on deposit than 50 per cent of its capital and surplus, the sum of $20,000, which was deposited in the James Valley Bank, the president soliciting it upon the representations to her that he only wanted it for ten days. That fact should have warned the treasurer that the bank was in desperate financial stress, and, in fact, the bank closed its doors before the expiration of the ten days.

■■ Appellants contend error on account of the treasurer over depositing, on account of an excessive amount of money on hand, that she could not comply with the statutory mandate without making excess deposits in some banks, and that she could not anticipate which, if any, of the banks would fail, but, on account thereof, neither she nor the sureties on the bonds can be liable.

Section 6888 reads as follows:

"*Deposits, Interest, How Regulated.* The county treasurer shall deposit and at all times keep on deposit in state, national or private banks within the county, having approved and responsible financial standing, the money in his hands as county treasurer. Any such bank may apply for the privilege of keeping such funds upon the conditions herein prescribed and shall state in the application the rate of interest it will pay on such deposits and the amount of money desired, provided that no bank at any time shall have on deposit county funds in excess of fifty per cent of the capital and surplus of such bank. Provided, that if such banks fail to make

application on or before the first day of April of each year, or if the rate of interest offered in all applications received is too low, such application shall be rejected and it shall be the duty of the county treasurer to advertise for applications for the handling of such funds by banks outside as well as within the county. The county treasurer shall advertise for such applications in the official newspapers of the county and not exceeding five other legal newspapers in the state and the banks which agree to pay the highest rates of interest for such deposits shall be accepted and designated as depositaries. * * * And it shall be the duty of the board of county commissioners to approve such applications."

It would seem that the treasurer cannot escape liability unless she affirmatively shows that she has fully complied with the statute just quoted from. If the capital and surplus of the banks, who have made applications before the 1st day of April, were insufficient for the requirements to deposit all of the moneys which may come into her hands, as county treasurer, it was her duty to comply with the terms of the statute, to readvertise and procure sufficient applications to take care of the immediate and future needs wherein to deposit the funds which she, as county treasurer, would receive, and from which applications the county commissioners could select and approve the applications as aforesaid. As it appears to us, from the proof before the court, the defendants failed to show the necessity for making excess deposits, and, on account of such lack of proof, she and her bondsmen must be held accountable for the loss sustained.

Our attention is called to provisions in Rev. Code 1919, § 6888: " * * * That no bank at any time shall have on deposit county funds in excess of fifty per cent of the capital and surplus of such bank. * * * " and is a mandate and a prohibition against the bank only, and not as against the county treasurer, making it unlawful for the bank to have funds in excess of the 50 per cent limit. It is hard to conceive that a public servant, such as a county treasurer, whose duty it is to guard the public funds placed in her care, and who is charged with the knowledge of the statutes which make it unlawful for a bank to have moneys in excess of the 50 per cent limit, and our laws pertaining to her office, should escape liability and not be responsible. The duty she is charged with under the plain and concise mandate of the statute is not to

deposit with any such bank more than in excess of the 50 per cent limit. It is difficult to perceive, when a statute prohibits a person from receiving such funds, that a public official, such as a county treasurer, with the knowledge of the statutes, may turn over to an individual or corporation the county funds, and then say, after the acts have been committed, that "there was no statute directly naming me or prohibiting me from doing so." It is clear to us that the observance of the statute is as binding upon the county treasurer as upon the bank, and that the violation thereof by the county treasurer reposes the full responsibility upon her and her sureties for all losses sustained by the county, whose public funds she had in charge.

The court has fully considered this phase of appellants' contention, and we must emphatically adhere to the conclusion we reached in Roberts County v. Wickard, 53 S. D. 511, 221 N. W. 246; Perkins County v. Nelson, 53 S. D. 514, 221 N. W. 247. In those decisions it was held that the statutes forbid the treasurer to make such deposits.

Appellants further argue that the 50 per cent limitations was not intended to provide for the greater safety of the county money, but was legislation procured "at the instance of and on behalf of the banks." In an earlier part in the counsel's brief, we are reminded of the title to chapter 104, Session Laws of 1897 which they say was the original enactment for the keeping of public funds in banks, etc. The title to the act destroys the force of their contention. The title was as follows: "An Act to Provide for the Safe Keeping of Public Funds in the Hands of County Treasurers and Providing the Penalties for Non-Compliance Therewith." We believe that it was the clear intention of the Legislature that the 50 per cent limitation was part of the provision for the safe keeping of the public funds. That the Supreme Court of Nebraska in the case cited by appellants, State v. People's State Bank of Anselmo, 111 Neb. 126, 196 N. W. 912, 198 N. W. 1018, considered the limitation was for the safety of the funds is clear from a reading of the opinion of the court first decided and reported in 196 N. W. 912, and on rehearing what was said on this point was not in any way receded from or modified. Counsel has placed much stress upon differences of the language in our statute, section 6888, and the Nebraska statute. A careful reading of the

two statutes does not disclose any differences of meaning, and the results from the operations of both would therefore be the same.

██ ██ Appellants contend that it was unnecessary for state banks to give bonds for deposits of public funds on account of the Guarantee Fund Law, and that the limitation on the amount of public funds that might be deposited in a state bank was repealed by implication, but we do not believe that our Legislature intended such a repeal, for not only were the provisions for the 50 per cent limitation re-enacted in chapter 204, Laws of 1917, after the adoption of the Guarantee Fund Law, but, when the Guarantee Fund Law was carried into the Revised Code of 1919, there was also included in that Code, as part of the same enactment, the 50 per cent limitation in section 6888. There is no inconsistency between the provisions of the Guarantee Fund Law that banks coming under this provision shall not be required to give a depository bond for public funds and the provision of section 6888 that no bank shall have on deposit funds in excess of 50 per cent of its capital and surplus. Appellants contend that the limitation is unconstitutional under the Fourteenth Amendment of the Constitution of the United States, as it deprives the county treasurer of equal protection of the laws, because no such limitation is made upon the treasurers of municipalities, townships, and school districts. How the limiting of the amount of public funds that may be deposited in any one bank by the county treasurer could deprive her of equal protection of the laws, is surely an overstretched proposition of law, in seeking to escape liability. The cases cited by the appellants covering that part of their argument do not support such a contention.

The unconstitutionality of chapter 297 of the laws of 1923 or an act to amend section 6888 is urged. Appellants contend that the statute is void because of a defective title. If that should be conceded, then section 6888 would be the statute, and the 50 per cent limitation would remain unchanged and would be the law, as the language used in section 6888 covers the 50 per cent clause as fully as chapter 297, Laws of 1923.

[██ The two national banks, which were not subject to the Guarantee Fund Law, had furnished bonds to the county to secure county funds or deposits in those banks. The surety company on

those bonds failed. However, at the same time of the trial, $5,130 had been paid to the county in dividends on the liability of such surety company and $1,000 had been paid as dividends from the assets of the Broadland State Bank. The dividends that have been paid are based on the claims allowed for the entire deposits, which include the excessive, as well as the nonexcessive, deposits. We have herein held the surety defendants should pay to the county the deposits that were excessive. To allow the county to retain the dividends collected on these excessive deposits would in effect amount to allowing the county to be paid a dividend on something for which they have already been, or will be upon the full payment of the judgment. We therefore hold that the judgment as entered by the trial court should be modified as follows: First, by reducing the amount of the judgment to the extent that the county had been paid dividends on the excessive deposits, either by the closed banks or the failed surety company; second by providing in the judgment that, upon the payment of the judgment, the surety defendants be subrogated to the rights of the county to collect the dividends on the deposit to the extent that they were excessive, both from the closed banks and the failed surety company.

Upon modification of the judgment as above indicated, the order denying a new trial will be affirmed. It is so ordered.

POLLEY, P. J., and CAMPBELL and RUDOLPH, JJ., concur.

ROBERTS, J., disqualified and not sitting.